**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Brian P. BALINT, Defendant and Appellant.**

**No. 15936.**

Supreme Court of South Dakota.

Considered on Briefs April 27, 1988.

Decided July 20, 1988.

R. Shawn Tornow, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Drake A. Titze of Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Appellant Brian P. Balint was charged with intentional damage to property (first degree) under SDCL 22–34–1, a Class 4 felony, and was sentenced to one year in the penitentiary, all of which was suspended with the exception of 90 days to be served in the Minnehaha County Jail. The incident stemmed from the breaking of a large (roughly seven by eleven feet) window on a vacant building. A jury convicted Balint and on this appeal, he asserts two errors by the trial court creating these issues:

1) Is intentional damage to property a specific intent crime (trial court held "no"); and

2) Is voluntary intoxication available as a defense in intentional damage to property cases (trial court held "no").

The second issue is dependent on the answer to the first. We affirm, holding that intentional damage to property is a general intent crime, to which the defense of voluntary intoxication is inapplicable.

### FACTS

On June 11, 1987, Balint was observed acting in an unusual manner on the sidewalks of Sioux Falls. Eyewitnesses indicate that he was behaving as if drunk or

drugged. He punched a newspaper stand, a sign, and shook his fist at a window. He also flexed his muscles in the window. He shoved at the window repeatedly, and the window burst. Police were called by the witnesses, and Balint, found panhandling, was arrested. Balint had no difficulty speaking to the officer, but smelled of alcohol. He denied any knowledge of breaking the window. At trial, Balint testified he woke up in jail without memory of why he was there. A witness for the State testified that Balint acted like he "had something to drink or [was] on some type of drug or possibly someone that might have escaped from McKennan Hospital." McKennan Hospital has a psychiatric care unit. Suffice it to say, his conduct was bizarre. Testimony of Balint, a drifter, revealed a long history of alcohol abuse, stints in detoxification centers, and panhandling.

## DECISION

Balint was convicted under the following statute:

SDCL 22-34-1. *Intentional damage to property—Degree of offense according to value.* Any person who intentionally injures, damages, or destroys public property without the lawful consent of the appropriate governing body having jurisdiction thereof, or private property in which other persons have an interest, other than by arson under chapter 22-33, without the consent of the other persons is punishable according to the following schedule.... Where the damage to property is more than two hundred dollars, the person is guilty of intentional damage to property in the first degree, which is a Class 4 felony.

Evidence established that the window value exceeded $200, and Balint had no consent from the owner.

SDCL 22-1-2(1)(b) defines "intent" and its variants as follows:

SDCL 22-1-2. *Definition of terms....*

\*    \*    \*    \*    \*    \*

(b) The words "intent, intentionally" and all derivatives thereof, import a specific design to cause a certain result or, when the material part of a charge is the violation of a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, a specific design to engage in conduct of that nature[.]

Balint argues that these statutes inherently mean intentional damage to property is a "specific intent" crime and the State must prove, as an element of that crime, that a defendant had the purpose of creating the harm that resulted from his action (*i.e.*, the State must prove the purpose of the shoves, as demonstrated by the bizarre conduct, was to break the window). If the crime requires that "specific intent" be proven, Balint contends he was entitled to an instruction on the defense of voluntary intoxication, as the evidence indicated diminished capacity to form the requisite intent.

"Voluntary intoxication" is defined in SDCL 22-1-2(49)[1] as "intoxication caused by substances that an actor knowingly introduces into his body, the tendency of which is to cause intoxication[.]" The defense of voluntary intoxication is defined in SDCL 22-5-5, of which the following is relevant here:

SDCL 22-5-5. *Voluntary intoxication —Crimes involving motive or intent....* [W]henever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act.

*State v. Waller*, 338 N.W.2d 288 (S.D. 1983), contains a passing reference to "specific intent" regarding intentional damage to property: "Defendant asserts, however, that although the evidence may support the jury's finding of specific intent to damage the door, it does not support a finding of specific intent to damage the car." *Wal-*

---

**1.** Renumbered to subsection (54) as of July 1, 1988.

ler, *id.* at 292 (the *Waller* defendants rammed a truck into a car, forcing the car through a garage door, apparently to open the door). This Court did not discuss the "intent" aspect, but merely opined that the evidence supported the conviction. *Waller, id.* An implication follows that this crime requires specific intent. However, we are not hinging our decision on such an implication because the present issue does not appear to have been raised in *Waller.*

The specific/general intent dichotomy was extensively analyzed in *State v. Huber,* 356 N.W.2d 468 (S.D.1984):

Specific intent with regard to mental state means what is the "particular" intent, i.e., is the crime restricted to those who act purposely or does it include those who act only recklessly, etc.? The phrase "specific intent" has an entirely different connotation when used with reference to such doctrines as "diminished capacity" and "voluntary intoxication." "Some crimes require a specified intention in addition to the intentional doing of the *actus reus* itself,—an intent specifically required for guilt of the particular offense...." Perkins, [*Criminal Law,* at 762 (2d ed. 1969).] LaFave & Scott, *Handbook on Criminal Law* § 28, at 202 (1972), states this is the most common usage of "specific intent." The term "designate[s] a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." LaFave & Scott, *supra.* Crimes such as larceny and burglary provide good examples....

\*     \*     \*     \*     \*     \*

*Use of the term "intentionally"* with regard to the crimes of eluding a police vehicle and resisting arrest *merely designates that culpability requires something more than negligence or recklessness.* However, *mere use of that term does not designate an additional men-*

tal state beyond that accompanying the act. Therefore, these are not "specific intent" crimes. There was no error in failing to instruct with regard to specific intent.

*Huber,* 356 N.W.2d at 472–73 (emphasis added; footnote omitted) (*see also State v. Big Head,* 363 N.W.2d 556 (S.D.1985); *State v. Rash,* 294 N.W.2d 416 (S.D.1980)).

*Huber's* language, accentuated above, is decisive. SDCL 22–34–1 expresses: "[I]ntentionally injures, damages, or destroys...." We cannot read such language to be words requiring more than a general intent. There is no additional mental state required beyond that accompanying the injurious or destructive act. Our present intentional damage to property statute, which replaced the malicious mischief statute, does require an intentional act on the part of a defendant, but no other subjective intent. SDCL 22–34–1. In 1978, the State Legislature changed the applicable definitions within SDCL 22–1–2. "Intentionally," as a definition, was changed from requiring a specific "intention" to requiring only a specific "design." We hold that this change was made to lessen the burden of proving intent. Thus, the statute evolved from requiring a specific intent to avenge some wrong (malicious mischief) to requiring only a general intent to damage the property of another without their consent. *See State v. Sterling,* 235 Kan. 526, 680 P.2d 301 (1984). The *Sterling* court wrote:

[This statute] requires, in substance, that there be a willful injury or damage to property in which another has an interest without the consent of such other person. There is *no specific intent required* as an element of the offense. This [statute] clearly falls into the category of a general intent crime....

*Sterling,* 235 Kan. at 530, 680 P.2d at 304–05 (emphasis added).[2] Clearly, Balint

2. *Sterling* interpreted Kan.Stat.Ann. § 21–3720(1)(a) ("willful" destruction of property), which it held to be a general intent subsection of Kan.Stat.Ann. § 21–3720(1). Subsection

(b), however, requiring intent to injure or defraud an insurer or lienholder, in contrast, was held to require specific intent.

had a design to damage the plate glass window.

The trial court was correct in disallowing Balint's voluntary intoxication defense, as that defense applies to specific intent crimes. *State v. Bittner*, 359 N.W. 2d 121 (S.D.1984). Failure to instruct the jury on diminished capacity due to voluntary intoxication in cases involving general intent crimes is not improper. *State v. Primeaux*, 328 N.W.2d 256 (S.D.1982).

Affirmed.

All the Justices concur.