**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Juan Manuel PINELA, Defendant and Appellant.**

**No. 16860.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1990.

Decided July 11, 1990.

Craig M. Johnson of Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

SABERS, Justice.

Juan Manuel Pinela appeals his conviction for two counts of vehicular homicide.

*Facts*

On April 15, 1989, a one-vehicle accident occurred on Highway 44 east of Rapid City, South Dakota. When Highway Patrol Trooper Lowell Nelson arrived at the accident scene, he observed the eight passengers of the vehicle lying on the road and in the ditch. He also noticed numerous beer cans strewn about the road and in the vehicle. As a result of the accident, two of the passengers, Maximino Morales and Pinela's eight-year-old daughter, died from multiple traumatic injuries.

Trooper Nelson received information from eyewitnesses at the accident scene that led him to believe Pinela was the driver of the vehicle. Consequently, Nelson went to the hospital where Pinela had been taken and, with the permission of the medical staff, talked to Pinela about the acci-

dent. Pinela sustained no head injuries and had not received any medication. He was not under arrest at this time, nor was he restrained in any manner by law enforcement personnel.

Nelson asked Pinela if he was driving the vehicle at the time of the accident, and Pinela said he was. Since it appeared to Trooper Nelson that Pinela had been drinking, he placed Pinela under arrest for driving under the influence of alcohol and read him his implied consent and *Miranda* warnings. Pinela indicated that he understood his rights and agreed to waive them and talk to Nelson. Pinela again said he was driving the vehicle at the time of the accident and admitted to drinking some beer. While talking with Nelson, Pinela did not display any signs of discomfort or mental incapacity due to his injuries. Later that night, Nelson and Investigator Jack Hoar questioned Pinela again. As before, the officers informed Pinela of his *Miranda* rights and Pinela again said he understood his rights and agreed to talk about the accident.

During the autopsy of Morales, a blood sample was taken and given to a Pennington County deputy sheriff. The sample was subsequently lost. The deputy sheriff testified the sample must have been left at the morgue.

Pinela was charged with two counts of vehicular homicide, driving or control of a vehicle while under the influence of alcohol, and driving or control of a vehicle while having .10 percent or more of alcohol in his blood. Prior to trial, Pinela filed a motion to suppress the statements he made to law enforcement personnel when he was interviewed at the hospital. The trial court denied the motion, finding that the statements were voluntarily made after Pinela freely and knowingly waived his *Miranda* rights. The jury found Pinela guilty of both counts of vehicular homicide, but acquitted him of the other two charges. Pinela appeals, claiming his conviction should be reversed due to the loss of the blood sample from Morales and the failure to suppress his statements to law enforcement personnel. We affirm.

1. *Failure to preserve blood sample.*

■ Pinela claims the State's failure to preserve the blood sample from Morales was a violation of his constitutional right to due process of law because he was unable to present a complete defense without the blood sample. Pinela's defense was that Morales was driving the vehicle at the time of the accident. Pinela argues that if the blood sample had been preserved, it could have been matched to blood found on the driver's side of the vehicle, and such evidence would show that Morales was in fact driving the vehicle.

The United States Supreme Court recently addressed a state's obligation under the Due Process Clause of the Fourteenth Amendment to preserve evidentiary material. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.*, 488 U.S. at ——, 109 S.Ct. at 337, 102 L.Ed.2d at 289.

Under the facts of this case, *Youngblood* is controlling. The record contains no evidence of bad faith on the part of law enforcement personnel. The loss of the blood sample by the deputy sheriff can at worst be described as negligent. The blood sample had little or no exculpatory value and "would not have altered the ultimate verdict of the jury." *State v. Boykin*, 432 N.W.2d 60, 67 (S.D.1988). Even if the blood sample had been preserved and was matched to the blood found on the driver's side of the vehicle, Pinela's defense would not necessarily benefit. Testimony at trial established that an unrestrained body may be tossed about extensively in an automobile accident. As a result, it would not be unusual for someone riding in the passenger side of a vehicle to leave blood on the driver's side after an accident. Therefore, the evidence would not necessarily help Pinela establish that he was not driving the vehicle, especially since there was testimo-

ny by others that he *was* driving.*

2. *Failure to send a blood sample to the state laboratory.*

Pinela contends that the failure to send the blood sample of Morales to the state laboratory in compliance with SDCL 34–25–22.1 constitutes reversible error. SDCL 34–25–22.1 provides:

The county coroner of each county shall take or cause to be taken blood samples of any person who has died from apparent violence, fire, suicide or motor vehicle, agricultural, or industrial accident. The samples shall be taken as soon as practicable after the death has been discovered and forthwith transmitted to the office of laboratory services.

Our decision in *State v. Clothier*, 381 N.W.2d 253 (S.D.1986), explained that a violation of SDCL 34–25–22.1 does not constitute reversible error per se. A violation of the statute constitutes reversible error only if the defense is prejudiced as a result of the violation. Since Pinela was not prejudiced by the loss of the blood sample, as explained in the preceding section, the statutory violation in this case is not reversible error.

3. *Suppression of Pinela's statements to law enforcement personnel.*

Pinela claims the trial court improperly denied his motion to suppress the statements he made to law enforcement personnel while he was at the hospital. Pinela argues the trial court was clearly erroneous in finding that he validly waived his Fifth Amendment rights.

A defendant may waive his *Miranda* rights provided it is done voluntarily, knowingly, and intelligently. *State v. West*, 344 N.W.2d 502 (S.D.1984). Whether a waiver is effective is determined by examining the totality of the circumstances surrounding the waiver. *State v. Bult*, 351 N.W.2d 731 (S.D.1984). "The State has the burden of proving beyond a reasonable doubt that a defendant waived his constitutional rights and freely and voluntarily made any state-

ments." *State v. Braddock*, 452 N.W.2d 785, 788 (S.D.1990).

The trial court did not err in concluding that the State proved beyond a reasonable doubt that Pinela effectively waived his *Miranda* rights. Pinela claims his waiver cannot be deemed effective because he was being treated for shock in a hospital following a severe traffic accident. However, physical injuries and medical treatment alone do not render a waiver of *Miranda* rights ineffective. As the Michigan Supreme Court explained in *People v. Cleveland*, 251 Mich. 542, 547, 232 N.W. 384, 385 (1930): "The mere fact that a defendant was suffering from severe physical injuries, and was under great excitement and strain, does not of itself render a confession inadmissible." The physical injuries or medical treatment must affect a defendant's ability to intelligently decide whether to waive his rights before such circumstances will require suppression of statements. In this case there is no evidence that Pinela was so affected. In short, he was informed of his *Miranda* rights, clearly indicated he understood those rights, and, in spite of his injuries, freely and coherently talked to the investigating officers.

All the Justices concur.

---

* We note that Pinela failed to offer any evidence that the blood found on the driver's side of the vehicle did not match his own.