Unified Judicial System

 

 
 State of South Dakota
Plaintiffs and Appellee, v.
Richard Lynn Laplante
Defendant and Appellant.
And
State of South Dakota
Plaintiff and Appellee,
v. 
Carolyn Susan Laplante
Defendant and Appellant. 
[2002 SD 95]
South Dakota Supreme Court
Appeal from the Circuit Court of The Second Judicial Circuit
Minnehaha County, South Dakota
Hon. Peter H. Lieberman, Judge
Mark Barnett Attorney General 
Michelle K. Bennett Assitant Attorney General
Pierre, South Dakota
Attorneys for plaintiff and appellee
.
 
Gary Conklin Rapid City, South Dakota
Attorney for defendant and appellant Richard Laplante.
Steven Binger Sioux Falls, South Dakota
Randall D.B. Tigue Minneaplis, Minnesota
Attorneys for defendant and appellant Carolyn Laplante.
 
Considered on Briefs April 22, 2002
Opinion Filed 8/7/2002


#21993, #21999
 
ZINTER, Justice
 
[Â¶1.] Carolyn and Richard LaPlante (Carolyn, Richard, or LaPlantes) appeal from their convictions of maintaining a place for the purpose of using, keeping, or selling controlled substances in violation of SDCL 22-42-10.[1]   LaPlantesâ convictions arose out of their three sonsâ involvement in drug activity in the family home.  Carolyn and Richard raise a number of issues on appeal.  We address their challenge to the sufficiency of the evidence to support their convictions, and the introduction of marijuana and firearm evidence.  We affirm.  
FACTS AND PROCEDURAL HISTORY
[Â¶2.] At all times material to this case, Richard and Carolyn lived in a split-level home in Sioux Falls.  Their three sons (Jesse, age 21; Tyler, age 19; and Jared, age 17) also resided in the home.  The boysâ bedrooms were on the lower level, LaPlantesâ bedroom was on the upper level, and there was an open stairway between the two.  The lower level also contained a number of common areas including a television room (hereinafter referred to as Jesseâs television room), a furnace room, a storage room, and a family room. 
[Â¶3.]          Carolyn, Richard, and their sons all used the lower level.  Although the extent of that use was in dispute, there is no dispute that Carolyn collected laundry from the lower level, and Richard would often watch movies in the family room.  Additionally, Carolynâs teacher supplies and household storage items were located in the storage room, the furnace and related items were in the furnace room, and a large screen television was in the family room.  In order to access any of these common areas, LaPlantes would have to walk by two or all three of the boysâ rooms.
[Â¶4.] The evidence reflects that the LaPlante family problem with drugs started as early as 1994.  In 1994 and 1996 Jesse was arrested on drug charges.  Carolyn was called to the police station following the 1996 arrest.  The police told Carolyn that Jesse had been using methamphetamine.  Having worked as a school district drug prevention advisor, Carolyn was aware that methamphetamine was an extremely addictive drug.
[Â¶5.] Obviously concerned, Carolyn arranged for Jesse to attend drug treatment.  Although Jesse completed the treatment program, he did not complete the recommended aftercare.  Instead, Jesse started private counseling and was placed on an antidepressant.  As a result of this and other conduct, Richard acknowledged that âwe always kept a little bit more of an eye on Jess.â  
[Â¶6.] The drug problems continued in 1998, when the Sioux Falls police received numerous calls from neighbors complaining about short-term traffic at LaPlantesâ home.  The police officers subsequently monitored the home.  During the monitoring, they observed a man leave.  The officers searched him and discovered marijuana on his person.
[Â¶7.] As a result of these events, two police officers conducted what they described as a âknock and talkâ at LaPlantesâ home.  During that visit, the officers specifically informed Richard and Carolyn of the numerous calls the police had received about the short-term traffic.  They also informed Richard and Carolyn that the police suspected that drugs were being sold from the home.  Although the officers asked for permission to search the home, LaPlantes declined to give their consent.  Before leaving, the officers told the LaPlantes that if drugs were being sold from their house, they could face civil and criminal penalties.
[Â¶8.] In early 2000, the police began receiving information that ultimately led to a search of LaPlantesâ home.  The affidavit in support of the search warrant reveals that a confidential informant alleged that he had purchased ecstasy (a controlled substance) from another informant who had purchased the ecstasy from Jesse at LaPlantesâ home.  Another informant disclosed that she had sold Jesse a gram and Jesseâs brother 1/8th ounce of cocaine in LaPlantesâ home.
[Â¶9.] As a result of this information, the police obtained and executed a search warrant.  All of the officers who entered the home testified that they smelled the odor of burning marijuana.  Although no burning marijuana was discovered,[2]  controlled drug paraphernalia (including methamphetamine and cocaine residue) were found in plain view in the lower level.  Controlled drugs, controlled drug paraphernalia, marijuana, marijuana paraphernalia, and other items used in the drug trade were also found concealed in the boysâ bedrooms, the furnace room, and Jesseâs television room.
[Â¶10.] The evidence that was removed from the lower level of the home included:
Exhibit 2, Glock handgun 
Exhibit 3, Three Glock magazine rounds 
Exhibit 4, Holster and bullets
Exhibit 5, Pipes and residue 
Exhibit 6, Address book and Rolodex
Exhibit 7, Leather bong 
Exhibit 9, Spoons with residue of cocaine or methamphetamine
Exhibit 10, Tin with needles
Exhibit 11, Tool organizer with 8.4 grams of methamphetamine
Exhibit 12, Suspected methamphetamine
Exhibit 13, Baggies, pipe and needle 
Exhibit 14, Gun safe
Exhibit 15, Olympic Arms AR15 rifle
Exhibit 16, Clip with bullets 
Exhibit 17, SIG-Sauer handgun 
Exhibit 20, One-fourth pound of marijuana 
Exhibit 21, Triple beam scale 
Exhibit 22, Ammunition
Exhibit 23, Notebooks and receipts (âowe sheetsâ)
Exhibit 25, Bulletproof vest
Exhibit 26, Baggies, foil, scale, and pipes
Exhibit 27, Glock handgun
Exhibit 28, Magazine and bullets
Exhibit 29, A âone-hitterâ found on Jared
Exhibit 31, Hemostats, pipes, and razor blades
Exhibit 32, Spoon with residue of cocaine or methamphetamine
Exhibit 33, Photocopied pages from the book Secrets of Methamphetamine Manufacture:  Including Recipes for MDA, Ecstasy, and Other Psychedelic Amphetamines (a book discussing the âclandestineâ manufacture of controlled substances)
Exhibit 34, Triple beam scale and bong
Exhibit 35, Baby wipes container and syringes 
 
[Â¶11.] This evidence was found in the following specific locations:  Jesseâs bedroom and Jesseâs television room contained various items of marijuana smoking paraphernalia and various items associated with controlled substances, including spoons, a snorting device, a plastic dish, razor blades with a powdery substance, syringes, and approximately 8.4 grams of methamphetamine.  One spoon was in plain view under a coffee table.  A syringe was also found in plain view behind a chair.  The spoons, plastic dish, and syringes tested positive for either cocaine or methamphetamine.  Officer Mundt testified that additional syringes were observed in plain view in a wastebasket, but they were not seized and entered into evidence as exhibits.[3] 
[Â¶12.] The following exhibits were found in Tylerâs room:  a safe containing a notebook that listed names and dollar amounts (âowe sheetsâ), an assault rifle, a SIG-Sauer handgun and ammunition, a bulletproof vest, a quarter pound of marijuana, a triple beam scale, and various marijuana pipes.  The Glock handgun was found loaded under Tylerâs bed pillow.
[Â¶13.] The following exhibits were found in Jaredâs room:  a small scale, case, marijuana seeds and residue in bags.  The police also found another scale and a âone-hitterâ with marijuana residue on Jaredâs person.
[Â¶14.] After the search, Sergeant Mundt interviewed Richard and Carolyn.  Although there is a dispute concerning the conversation, Sergeant Mundt testified that Richard admitted that he knew that there were drugs in the house.[4]   Mundt testified that Richard said he had told the boys âto get it out.â  Richard, however, also said, âtheyâre my boys, what can I do?â
[Â¶15.] On April 2, 2001, a jury found Richard and Carolyn guilty of violating SDCL 22-42-10.  LaPlantes were sentenced to four years in the state penitentiary.  
Their sentences were suspended on a number of conditions.  One condition was that they keep their home free of marijuana and controlled substances for four years.  
[Â¶16.] We address the following issues:
(1) Whether there was sufficient evidence for a jury to find that LaPlantes knew of the use, storage, or sale of controlled substances in their home, and whether they knowingly maintained a place where controlled substances were used, kept or sold.
 
(2) Whether the trial court should have admitted the firearms and marijuana evidence.
 
DECISION
[Â¶17.]              (1)     Whether there was sufficient evidence for a jury to find
that LaPlantes knew of the use, storage, or sale of controlled substances in their home, and whether they knowingly maintained a place where controlled substances were used, kept or sold.
 
[Â¶18.] LaPlantes make a three-part argument challenging the sufficiency of the evidence to support the juryâs finding that LaPlantes had knowledge of âcontrolled substancesâ in the home and the finding that they knowingly maintained a place for âcontrolled substanceâ use, storage, or sale.  LaPlantes argue:  (a) that the marijuana evidence was insufficient to sustain the convictions; (b) that the remaining evidence only reflected âlimitedâ controlled substance use for the personal consumption of the boys, and therefore the controlled drug evidence was insufficient to sustain the convictions; and (c) that they had insufficient knowledge of the use, storage, or sale of controlled substances in the home to sustain the convictions.
[Â¶19.]  We first address the standard of review.  âIn determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt.â  State v. Augustine, 2000 SD 93, Â¶26, 614 NW2d 796, 800.  In making that determination, we âaccept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.â  Id.  Moreover, âthe jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence.â  State v. Beynon, 484 NW2d 898, 907 (SD 1992) .  Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence.  State v. Frazier, 2001 SD 19, Â¶44, 622 NW2d 246, 261.  âNo guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt.â  State v. Holway, 2002 SD 50, Â¶11, 644 NW2d 624, 628 (citing State v. Buchholz, 1999 SD 110, Â¶33, 598 NW2d 899, 905).
(a) Sufficiency of the Marijuana Evidence.
[Â¶20.] LaPlantes first argue that the evidence of marijuana use, storage, and sale in the home was insufficient to sustain a finding of guilt.  LaPlantesâ argument is premised on the fact that marijuana is not a âcontrolled substanceâ within the meaning of SDCL 22-42-10.
[Â¶21.] Although we agree that marijuana is not a controlled substance, marijuana was not the only evidence found in this home.  LaPlantes ignore the other substantial evidence of controlled drug use, storage, and sale in their home.  That controlled drug evidence included cocaine, methamphetamine, related paraphernalia, and other items used in the controlled drug trade (such as guns, scales, syringes, and drug sales records).
(b) Sufficiency of the Controlled Substances Evidence.
[Â¶22.] LaPlantes next argue that âapart from the marijuana evidence,â the only other evidence was a âlimited amountâ of controlled substances for Jesseâs personal use.  LaPlantes argue that a small amount of a controlled substance, which is only intended for personal use, is insufficient to sustain a conviction for maintaining a house for the use, storage, or sale of controlled substances.  LaPlantes point out that other jurisdictions with similar statutes have held that mere possession of limited amounts of controlled substances for personal use is insufficient to support a conviction.  See Barnes v. State, 339 SE2d 229, 234 (Ga 1986).  See also United States v. Verners, 53 F3d 291, 296 (10thCir 1995); State v. Ceglowski, 12 P3d 160, 163 (WashCtApp 2000); People v. Vera, 82 CalRptr2d 128, 129-130 (CalCtApp 4th 1999); Meeks v. State, 872 P2d 936, 938 (OklaCrimApp 1994); Howard v. State, 815 P2d 679, 683 (OklaCrimApp 1991).
[Â¶23.] We agree with the other jurisdictions and hold that SDCL 22-42-10 does not generally prohibit the mere possession of a small quantity of controlled drugs that is only intended for the personal use of the occupant.  This case, however, involves more than the isolated, personal use of limited controlled substances.  The totality of the evidence found  here circumstantially suggests that both methamphetamine and cocaine were used, stored, and sold in the home on an ongoing basis.  Some of that evidence included:  8.4 grams methamphetamine, scales, razor blades, baggies, aluminum foil, spoons, a mirror, syringes, a Rolodex, an address book, a notebook with names and dollar amounts (âowe sheetsâ), photographed pages from a book on the production of controlled drugs, two pistols with ammunition (one of which was found loaded under a bed pillow), a bulletproof vest, an assault rifle with ammunition, a safe, and cocaine and methamphetamine residue on the drug paraphernalia.
[Â¶24.] This evidence was highly significant.  Detective Kneip and Sergeant Mundt explained that methamphetamine is burned in spoons or on aluminum foil to ingest the smoke; syringes are used to inject the methamphetamine or cocaine into the veins; and razor blades are used to cut the controlled drugs before they are weighed and placed in the baggies.  The photocopied book explained in detail how to illegally manufacture controlled drugs and avoid detection.  This controlled drug paraphernalia, together with the drug records, weapons, and controlled substances was sufficient to circumstantially prove that the LaPlante house was used to sell, keep and use controlled substances on a recurring basis.
(c) LaPlantesâ Knowledge of Controlled Substance Use,
Storage, or Sale.
 
[Â¶25.] We have held that despite the absence of the word âknowinglyâ in SDCL 22-42-10, âknowledge is an essential element of the offense.â  State v. Stone, 467 NW2d 905, 906-7 (SD 1991).  LaPlantes argue that they lacked that requisite knowledge of controlled substance use, storage, or sale.
[Â¶26.] There was, however, extensive evidence of LaPlantesâ knowledge of controlled drug use, storage and sale in this home.  LaPlantes knew that Jesse had used methamphetamine, that he attempted drug treatment, and that he did not complete aftercare.  Jesseâs behavior after treatment was of sufficient concern to both parents that LaPlantes âalways kept a little bit more of an eye on Jess.â  Richard also testified that in the fall of 1997 or 1998, he discovered a bong in the family room that belonged to Jesse.
[Â¶27.] Both Carolyn and Richard were also advised at the âknock and talkâ in 1998 that the police believed ongoing drug sales were being conducted in the home.  Moreover, Sergeant Mundt testified that when the house was searched, Richard admitted that he knew his sons had drugs in the home.  Although LaPlantes dispute this testimony, the other evidence of ongoing controlled drug activity found throughout the common areas and bedrooms in the lower level of the home belie Richardâs denial.
[Â¶28.] In addition to the foregoing, LaPlantesâ knowledge of controlled drug activity could have been circumstantially inferred from Tylerâs purchase of the safe and assault rifle, and Jesseâs purchase of a Glock handgun, all at a time when their employment would not have supported such purchases.  The testimony revealed that Tylerâs safe cost approximately $800 and his assault rifle cost approximately $1200.  Further testimony revealed that, although Jesse was unemployed, he purchased the Glock handgun for $500.  Carolyn knew of their purchases, and even recorded the serial number of Jesseâs Glock handgun on her computer records.
[Â¶29.] Most importantly, one cannot overlook the obvious indicia of drug activity throughout the lower level of the home.  This was a split-level home with an open stairway.  Jesseâs room could be seen from the front door and Carolyn testified that she could sit at the kitchen table and see who was coming and going.  When the police executed the warrant, an overwhelming smell of burning marijuana permeated the residence.  This pervasive odor would clearly suggest to parents with this history that illegal drug activity was occurring.  Moreover, the entire family was often in and out of the lower level.  Carolyn kept her school supplies in the lower level, and she would go downstairs to get the laundry.  Richard often watched television and movies in the family room on the lower level.  The sum of this evidence, together with the reasonable inferences therefrom, could have convinced a jury that LaPlantes had knowledge of ongoing controlled drug use, storage, and sale in the lower level of the home.
[Â¶30.] LaPlantes discount this evidence of knowledge by arguing that it was only circumstantial in nature.  The State may, however, prove all elements of an offense through circumstantial evidence.  State v. Holzer, 2000 SD 75, Â¶15, 611 NW2d 647, 651.  Knowledge involves the actorâs state of mind, and â[an] actorâs âstate of mindâ at the time of the offense may . . . be determined from his acts, conduct and inferences which are fairly deducible from the circumstances surrounding the offense.â  Id.  Therefore, contrary to LaPlantesâ assertions, âthe jury, as the exclusive judge of facts, credibility of the witnesses, and the weight to be given the evidence,â could have inferred âknowledge and intent from the acts, words, and conduct ofâ LaPlantes.  Id. at Â¶16, 611 NW2d at 652.
[Â¶31.] LaPlantes also argue that the circumstantial evidence of knowledge failed to exclude every reasonable hypothesis of innocence.  Consequently, LaPlantes argue that the Stateâs circumstantial evidence was insufficient under State v. Esslinger, 357 NW2d 525 (SD 1984).  In Esslinger we noted that a conviction based entirely on circumstantial evidence must exclude every reasonable hypothesis of innocence.
â[T]o warrant conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent.â  This rule does not mean the evidence must be such as to exclude every possible hypothesis of innocence.  Rather, it requires only the exclusion of [a] reasonable hypothesis of innocence.
 
Id. at 530-31 (internal citations omitted) (emphasis added).  
[Â¶32.] More recently, however, we discarded this concept and held that in circumstantial evidence cases, the âreasonable hypothesis of innocenceâ instruction is no longer necessary.  State v. Webster, 2001 SD 141, Â¶Â¶11-12, 637 NW2d 392, 396.  Rather, we held that our settled law on reasonable doubt suffices to determine if circumstantial evidence is sufficient to prove the elements of an offense.  Id.  We noted that circumstantial and direct evidence have equal weight, and circumstantial evidence can be more reliable than direct evidence.  Id. at Â¶13, 637 NW2d at 396.  To the extent that Esslinger suggests otherwise, it has been overruled by Webster.[5] 
[Â¶33.] LaPlantes finally argue that the boysâ use of this home precludes a finding of Richardâs and Carolynâs drug knowledge under the authority of Franklin v. State, 962 SW2d 370, 373 (ArkCtApp 1998).  In Franklin, the Arkansas court reversed a conviction for maintaining a drug premises.  In that case the defendant shared a house with another occupant.  The police found cocaine under the carpet in a bedroom and under a doghouse in the backyard.  However, that defendant did not use the bedroom involved, and he was asleep in a different room when the police found the cocaine.  Furthermore, that defendant was afraid of the dogs.  Finally, the Arkansas Court noted that no drugs were found in plain view or in the common areas of the house.  Id. at 373.  In contrast, the drugs in this case were found throughout the lower level, including a common area.  There was also other direct and circumstantial evidence of the LaPlantesâ knowledge of the ongoing drug activities in the lower level.  Therefore, Franklin is inapposite.
[Â¶34.]              (2)     Whether the trial court should have admitted the
firearms and marijuana evidence.
 
[Â¶35.] LaPlantes argue that the firearms and marijuana evidence was irrelevant.  ââRelevant evidenceâ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.â  SDCL 19-12-1 (Rule 401).  We review the admissibility of evidence under the abuse of discretion standard.  State v. Bunger, 2001 SD 116, Â¶7, 633 NW2d 606, 608.
Marijuana Evidence
[Â¶36.] The trial court admitted the marijuana evidence because the court concluded that it was probative of LaPlantesâ knowledge of controlled drug use, presence, or sale in this home.  The trial court noted that even though marijuana is not a controlled drug, the presence of marijuana made it more probable that other drugs might be present.  The trial court stated:
Clearly, if you find marijuana, which is one kind of drug, it is more likely you will find other kinds of drugs and the brief submitted by the defense itself states that where there were controlled substances, 51% of the time marijuana was also found . . . .  Relevant evidence is like a brick in a house, [it is also] not a touchdown, but moving the ball forward a few yards.
 
We agree.
[Â¶37.] The evidence of marijuana possession, use, and sale in this home made it more probable, rather than less probable, that LaPlantes knew other drugs were also involved.  LaPlantesâ own statistical evidence demonstrated that more than half of the drug cases they referenced involve both marijuana and controlled substances.[6]   We agree that the evidence of marijuana in the LaPlante home was simply one âbrickâ in a circumstantial case that made it more probable that LaPlantes had knowledge of controlled substance presence, use and sale.
[Â¶38.] LaPlantes, however, contend that other courts have found marijuana evidence irrelevant.  See State v. Larson, 512 NW2d 732 (SD 1994), Turner v. United States, 396 US 398, 90 SCt 642, 24 LE2d 610 (1970), and Leary v. United States, 395 US 6, 89 SCt 1532, 23 LE2d 57 (1969).  LaPlantesâ reliance on these cases is misplaced.  Larson involved a murder where marijuana was obviously irrelevant to the charge.  Larson, 512 NW2d at 737.  Both Turner and Leary are inapposite because they involved  statutory presumptions, rather than the evidentiary challenge of relevancy.  Unlike Turner and Leary, the State made no claim here that marijuana âpresumptivelyâ established knowledge of controlled substances.  Instead, the marijuana evidence was only used as one circumstantial âbrickâ to suggest it was more probable that LaPlantes had knowledge of controlled drug activity in the lower level of their home.  The marijuana evidence was properly admitted.
Firearms Evidence
[Â¶39.] The evidence in this case involved a number of firearms (including an assault rifle, two pistols, ammunition, and a bulletproof vest) together with controlled drugs, drug paraphernalia, and drug records found within a safe.  Moreover, one of the pistols was found loaded and hidden under a bed pillow.  As the courts in United States v. Rhodes, 229 F3d 659, 661 (7thCir 2000), and United States v. Meirovitz, 918 F2d 1376, 1379 (8thCir 2000), point out, such caches of weapons and ammunition may be indicative of the drug trade.  Because drug trade activities were at issue in this case, the firearm evidence was relevant.[7] 
[Â¶40.] We have considered LaPlantesâ other issues on appeal and find them without merit.
[Â¶41.] Affirmed.
[Â¶42.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.



[1] .         SDCL 22-42-10 provides that â[a]ny person who keeps or maintains a place which is resorted to by persons using controlled drugs and substances for the purpose of using such substances, or which is used for the keeping or selling of such substances, is guilty of a Class 5 felony.â 

[2] .            LaPlantes claim the smell was the result of âBidiâ cigarette use.

[3] .            LaPlantes disputed the existence of the syringes in the wastebasket and argued that the videotape received into evidence showed no syringes in the wastebasket.
 

[4] .         Tyler testified that he sold marijuana from the home, although he denied   selling controlled substances.

[5] .         We also note that Esslinger has no application here because knowledge was not proved by circumstantial evidence alone.  Richardâs admission was direct evidence of knowledge of the boysâ drug activities.

[6] .         We express no opinion on the validity of LaPlantesâ statistical model.  We only note that a 51% probability supports the âmore probableâ standard.
 

[7] .            LaPlantesâ reliance on State v. Rufener, 401 NW2d 740 (SD 1987), is misplaced.  In Rufener this Court found that a single pistol discovered in a rented automobile was not relevant in a prosecution for one charge of distribution of marijuana.  Id. at 743.  Rufener is inapposite because LaPlantesâ case involved different charges and additional evidence associated with ongoing controlled drug activity.