2003 SD 58

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David Lee BOUSUM, Defendant and Appellant.**

**No. 22249.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 2003.

Decided May 21, 2003.

Lawrence E. Long, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and Appellee.

Joseph M. Kosel, Lawrence County Public Defender's Office, Deadwood, South Dakota, Attorneys for defendant and Appellant.

MEIERHENRY, Justice.

[¶ 1.] David Lee Bousum appeals his convictions for one count of first degree intentional damage to property and one count of resisting arrest. We affirm.

### FACTS

[¶ 2.] On September 4, 2001, Bousum and his girlfriend got into an argument in a bar located on Main Street in Lead, South Dakota. Bousum slapped his girlfriend during the argument and law enforcement was called to the scene. Three officers eventually arrived including a Deadwood police officer summoned to provide assistance. As a result of their investigation, the officers arrested Bousum for simple assault and domestic violence and handcuffed him.

[¶ 3.] Bousum became very agitated over his arrest and a struggle ensued. Ultimately, the officers forced Bousum into the Deadwood officer's patrol car on the passenger side of the back seat. As one of the officers closed the door and began to turn away from the vehicle, he heard a loud thumping coming from the passenger window. Turning back toward the vehicle, he saw Bousum kicking at the passenger window with both of his feet. As the officer reached out to open the door, Bousum kicked again and the passenger window exploded in the officer's face. The officer sustained a cut in the forehead and a significant cut in his upper lip. While the officer tended to his injuries, the other officers were able to restrain Bousum and to transport him to jail.

[¶ 4.] Bousum was indicted on September 6, 2001 for one count each of aggravated assault, first degree intentional damage to property, simple assault and resisting arrest. Bousum's jury trial was on November 28. At the close of trial, the jury returned guilty verdicts on the intentional damage to property and resisting arrest charges and not guilty verdicts on the charges of aggravated and simple assault. Bousum was sentenced to ten years in the penitentiary, with six suspended, on the intentional damage to property conviction and to a concurrent one year sentence in the county jail for resisting arrest. He appeals.

[¶ 5.] On April 8, 2002, Bousum's counsel filed a motion with this Court to withdraw from his representation in this appeal based upon the lack of any non-frivolous issues for appeal. This Court denied the motion and directed counsel to brief this matter in conformity with *State v. Korth*, 2002 SD 101, 650 N.W.2d 528.

## COMPLIANCE WITH *KORTH*

[¶ 6.] *Korth* requires that certain items be included in Section A of a brief filed pursuant to the procedures established in that case: a statement of the case and facts encompassing those facts sufficient to present any claim or claims of error asserted by the client in Section B of the brief; a description of any significant motions filed in the case and the trial court's disposition of the motions; a statement that the case is being submitted pursuant to *Korth* and that counsel has thoroughly reviewed the record and discussed the case with trial counsel and the client; a statement that counsel has not identified any arguably meritorious issue on appeal; and, counsel's signature. *Korth,* 2002 SD 101 at n. 6, 650 N.W.2d at 535–536.

[¶ 7.] Bousum's brief fulfills some, but not all of these requirements. Specifically, the brief does not contain statements that counsel has thoroughly reviewed the record, that counsel has discussed the case with Bousum,[1] and that counsel has not identified any arguably meritorious issues on appeal.

[¶ 8.] Contributing to some confusion here is counsel's presentation and briefing of a substantive issue in Section A of his brief. This Court did suggest in *Korth* that counsel might argue issues of possible merit in Section A. *See Korth,* 2002 SD 101, ¶ 17, 650 N.W.2d at 536 (Court refers to *Balfour* procedure of including a " 'Section A' (issues the attorney believes are meritorious)"). Further review of the Oregon procedures in *State v. Balfour,* 311 Or. 434, 814 P.2d 1069 (1991) that this Court adopted in *Korth* reflects that this suggestion was incorrect. *See State v. Arabie,* 2003 SD 57, ¶ 11, 663 N.W.2d 250. *See also Balfour,* 814 P.2d at 1080 ("Sec-

tion A . . . shall contain no assignments of error or argument").

[¶ 9.] Based upon the foregoing, Section A of Bousum's brief does not meet the requirements of *Korth,* nor does Section B of the brief.

> Section B of [a] brief [filed under *Korth* ] shall contain any claim of error requested by the client *and shall be signed by the client.* Section B shall attempt to state the claim and any argument in support of the claim as nearly as practicable in the manner that the client seeks, in proper appellate brief form.

*Korth,* 2002 SD 101 at n. 6, 650 N.W.2d at 536 (emphasis added)(quoting Oregon Rule of Appellate Procedure 5.90(1)(b)). Section B of Bousum's brief is not signed by Bousum. The signature is a necessary part of Section B and counsel is required to obtain it. *Id.*

[¶ 10.] Normally, failure to comply with the technical requirements of *Korth* would result in an order by this Court directing counsel to submit an amended brief conforming to *Korth.* However, our review of the briefs and record in this case reveals that there *are* "arguably meritorious" issues in this case. Our identification of arguably meritorious issues in a case submitted pursuant to *Korth* would usually require granting additional time for supplemental briefing on those issues. *See Korth,* 2002 SD 101 at n. 6, 650 N.W.2d at 535–36 (quoting Oregon Rule of Appellate Procedure 5.90(3)). However, we find that the present briefs are complete and supported by adequate authorities to warrant our consideration of the merits of these issues at this time. Therefore, we decline to order supplemental briefing and proceed to consider the merits of the substantive issues presented.

---

1. Appellate counsel *was* trial counsel and, therefore, the *Korth* requirement of discussions with trial counsel was obviously unnecessary.

## ISSUE ONE

[¶ 11.] **Did the repair of the window in the patrol car before Bousum could obtain his own damage estimate violate his constitutional and statutory rights?**

[¶ 12.] The day after Bousum's arrest, an employee for the City of Deadwood took the damaged patrol car to a local body shop and requested a repair estimate. That same day, without any notice to Bousum or opportunity for anyone to evaluate the damage on his behalf, the repairman was instructed to fix the vehicle. The final repair bill totaled $617.90. This was sufficient damage to convict Bousum of felony first degree intentional damage to property. *See* SDCL 22–34–1.

[¶ 13.] On appeal, Bousum argues that the repair of the patrol car without an opportunity for a defense repairman to evaluate the damages violated his Constitutional rights to due process and a fair trial and statutory provisions governing the preservation of evidence.

[¶ 14.] SDCL 23A–37–14 provides:

Any property, which is not contraband, seized or confiscated by law enforcement personnel, ostensibly for use as evidence in a criminal prosecution, shall be preserved, maintained or stored at the expense of the county where the criminal offense occurred. If the property is not contraband and is owned by a victim of the crime being investigated, the property shall be photographed by the appropriate law enforcement personnel and returned to the victim of the crime within thirty days of completion of forensic analysis unless the prosecuting attorney deems it essential to the prosecution of the case to retain the evidence. The photographs shall accurately and correctly represent the property and are admissible evidence pursuant to chapter 19–18 in any resulting criminal proceeding.

SDCL 23A–37–15 provides:

Before any property is returned to the owner pursuant to § 23A–37–14, the law enforcement personnel in possession of the property shall notify the defendant that the property will be returned to the owner. Upon a motion made by the defendant and upon good cause shown that the property contains exculpatory evidence of the defendant's innocence, the court may order the law enforcement personnel in possession of the property not to release it to the owner.

[¶ 15.] In applying Constitutional principles to these provisions in *State v. Arguello*, 502 N.W.2d 548, 550 (S.D.1993), this Court stated:

The State's violation of SDCL 23A–37–15 "does not automatically vitiate the conviction." *State v. Lyerla*, 424 N.W.2d 908, 911 (S.D.1988) (citation omitted). The State's destruction of evidence favorable to [the defense] is a violation of due process if the evidence requested by [the defense] and destroyed by the State is material either to guilt or punishment. Id. at 910 (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). The state's duty to preserve evidence is

limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984) (footnote omitted) (citation omitted) (emphasis added). *Additionally, [the defense] must show that the State acted in bad faith in releasing the [evidence].* *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988). (emphasis added).

 [¶ 16.] In conformity with the bad faith standard set forth above, this Court has recognized that mere negligence in the loss or destruction of evidence does not result in a constitutional violation. *See State v. Pinela*, 458 N.W.2d 795, 796 (S.D. 1990). The North Dakota Supreme Court has defined "bad faith" in the context of destroying evidence as follows:

> Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense.

*State v. Steffes*, 500 N.W.2d 608, 613 (N.D.1993)(citing *State v. Baldwin*, 224 Conn. 347, 618 A.2d 513 (1993)).

[¶ 17.] Based upon the foregoing standards, there is no indication of bad faith in the destruction of any evidence here. The record reflects that Deadwood law enforcement was anxious to get its vehicle repaired to protect the expensive equipment kept inside and because it was one of only four vehicles available for law enforcement duties. Further, there is no indication in the record that the prosecutor was even aware of the premature repair of the vehicle. Thus, the loss or destruction of any evidence resulting from the repair of the vehicle was clearly more negligent than an act of bad faith. *See e.g. State v. Schmidt*, 5 Neb.App. 653, 562 N.W.2d 859, 870 (1997)(no law enforcement bad faith in the return of evidence consisting of motor vehicle tires to the crime victim where the victim needed the tires and vehicle to travel to a scheduled job interview).

[¶ 18.] In *State v. Freeman*, 531 N.W.2d 190 (Minn.1995), the Minnesota Supreme Court considered a case where the state used several devices to conduct mechanical testing of the defendant's car without providing statutorily required notice to the defense. Similar to this case, the defendant contended that the state's tests irreversibly altered the condition of the car, thereby limiting the ability of his own automotive expert to conduct subsequent tests that might have corroborated his defense. The Minnesota court applied the following standards in its review:

> Once a discovery violation has occurred, the trial court is particularly suited to determine the appropriate remedy and has wide discretion in deciding whether to impose sanctions. In exercising its discretion, the court should consider all relevant factors, including the reason why notice was not given and the extent to which the violation prejudiced the opposing party. Absent a clear abuse of discretion, a reviewing court will not overturn the trial court's decision. Furthermore, although [the defendant] correctly contends that [state] discovery provisions are stricter, in some respects, than their federal counterparts, *the preclusion of evidence is a severe sanction that should not be lightly invoked.*

*Id.* at 197–198 (citations omitted)(emphasis added).

[¶ 19.] Here, Bousum did not even seek to preclude or suppress the testimony of the repairman who fixed the patrol car as a sanction for the destruction of evidence. Bousum also failed to object to the repairman's testimony during trial. Moreover, the State provided Bousum

with copies of the repairman's estimate, his final bill and photographs of the car taken before the repair of the damage. These materials allowed Bousum to cross-examine the repairman, to obtain his own repair estimates and to rebut the repairman's testimony with testimony from his own repairman.[2] In addition, we note that, as recently approved in *State v. Engesser*, 2003 SD 47, ¶ 46, 661 N.W.2d 739, 754–55, Bousum's counsel used the State's failure to properly preserve evidence as a factor in argument against the prosecution at trial. In *Freeman, supra*, the Minnesota Court held similar factors sufficient to remedy the destruction of evidence in that case. We reach a like conclusion here. Nevertheless, we take this opportunity to admonish the State for its careless handling of evidence and to remind it of its " 'duty to *zealously* protect evidence in its possession.' " *City of Bismarck v. Holden*, 522 N.W.2d 471, 475 (N.D.1994)(emphasis added)(quoting *Steffes*, 500 N.W.2d at 614, n. 5).

## ISSUE TWO

[¶ 20.] · **Was the jury required to draw an adverse inference from the State's destruction of evidence concerning the damage to the patrol car?**

[¶ 21.] In an argument closely connected to his first issue, Bousum argues that the jury was required to draw an adverse inference from the State's destruction of evidence concerning the extent of the damage to the patrol car.

**2.** We note that the photographs of the patrol car might have provided Bousum with more assistance in this regard had they more accurately represented the damaged patrol car, including a bent door frame, as was statutorily required. *See* SDCL 23A–37–14 (property seized as evidence and returned to crime victim must be photographed and photographs must "accurately and correctly" represent the property). Nevertheless, we conclude that the photographs, in conjunction with the de-

[¶ 22.] Generally, under the "adverse inference rule," " 'if a party has evidence under its control and does not present that evidence, an inference may be drawn that the evidence would not support that party's claim.' " *Burke v. Butte County*, 2002 SD 17, n. 4, 640 N.W.2d 473, 478 (quoting *Wuest ex rel. Carver v. McKennan Hosp.*, 2000 SD 151, ¶ 10, 619 N.W.2d 682, 686). Bousum did not request a jury instruction on application of the adverse inference rule here and, therefore, this issue is not preserved for appeal. *See State v. Hage*, 532 N.W.2d 406, 412 (S.D.1995)(failure to propose jury instruction waives issue for appeal). Even if it were, this Court has recently held that an adverse inference instruction is justified for the destruction of evidence only where the destruction was intentional and in bad faith. *Engesser*, 2003 SD 47 at ¶ 46, 661 N.W.2d at 754–55. Because there is no evidence of bad faith in the destruction of any evidence in this case, no adverse inference instruction was warranted. *Id.*

## ISSUE THREE

[¶ 23.] **Is the evidence sufficient to sustain Bousum's convictions?**

[¶ 24.] Bousum argues that the evidence is insufficient in several respects to sustain his convictions.

"In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether

fense repair estimates and defense repairman's testimony, were sufficient to present the jury with an adequate basis on which it could have concluded that the damages to the patrol car were $500 or less and, therefore, insufficient for a conviction for felony intentional damage to property. *See* SDCL 22–34–1. Thus, we fail to identify any prejudice to Bousum resulting from any statutory violation in the State's poor photography.

there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." In making that determination, we "accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." Moreover, "the jury is ... the exclusive judge of the credibility of the witnesses and the weight of the evidence." Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence. "No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt."
*State v. Laplante*, 2002 SD 95, ¶ 19, 650 N.W.2d 305, 310 (citations omitted).

[¶ 25.] Bousum first argues that the evidence is insufficient to establish the amount of the damage to the patrol car. However, the evidence and testimony presented during trial on the issue of damages has been previously discussed in this decision. Although Bousum argues over the "mark-up" price of some of the parts used to repair the patrol car, that evidence was also presented to the jury and the jury obviously found sufficient evidence to establish damage to the patrol car exceeding five hundred dollars. This Court does not re-weigh evidence on appeal. *Id.*

[¶ 26.] Bousum also questions the sufficiency of the evidence to show his intent to commit the crime of intentional damage to property. Intentional damage to property is a general intent crime. *State v. Balint*, 426 N.W.2d 316, 318 (S.D. 1988). "There is no additional mental state required beyond that accompanying the injurious or destructive act." *Id.* In *Balint*, this Court upheld an intentional damage to property conviction where a defendant in a drunken stupor had re-

peatedly pushed against a plate glass window and broke it. We find even more persuasive evidence of intent here where Bousum repeatedly kicked against the window of the patrol car in an enraged state after struggling with law enforcement to resist arrest.

[¶ 27.] Based upon the foregoing, we hold that Bousum's claims of insufficient evidence lack merit.

## ISSUE FOUR

[¶ 28.] **Did the trial court abuse its discretion in denying Bousum's motion for a mistrial based upon juror bias?**

[¶ 29.] During a break in the prosecution's case at trial, a juror informed the court and counsel outside the presence of the rest of the jury that the evidence had caused him to realize that he actually observed some of the events in Lead on the night of Bousum's arrest. The juror stated that he drove down Main Street while the police cars were there, that he maneuvered around the cars to get by and that, in that process, he saw "somebody in the back of the police car kicking the window." The juror further qualified that all he recalled was "just trying to get by the situation and then' looking over and seeing the feet hit the window." The juror also stated that he thought he could still be impartial and that he had not shared the information with the other jurors.

[¶ 30.] After the juror was excused from the judge's chambers, defense counsel objected to the juror continuing in the case and moved for a mistrial. The trial court denied the motion and Bousum now challenges its ruling.

[¶ 31.] This Court reviews the denial of a mistrial motion under the abuse of discretion standard. *State v. Anderson*, 2000 SD 45, ¶ 36, 608 N.W.2d 644, 655.

Trial court's have considerable discretion in granting or denying a mistrial and to justify the granting of a mistrial, an actual showing of prejudice must exist. *Id.*

[¶ 32.] With regard to the issue of juror bias, this Court has recognized that "[j]urors need not be ignorant of the facts and issues. A defendant is only entitled to a fair and impartial jury, not a jury that has absolutely no prior knowledge of the facts of the case." *State v. Owens,* 2002 SD 42, ¶ 30, 643 N.W.2d 735, 745. Here, the record establishes that the juror's limited observations were not related to any facts at issue in the case. There was no dispute that Bousum kicked out the window of the patrol car. Given the absence of any indication of potential bias by the juror over a disputed fact, we find no abuse of discretion in the trial court's denial of Bousum's mistrial motion.

[¶ 33.] Affirmed.

[¶ 34.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 35.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 36.] I dissent because 1) the State's destruction of material evidence prejudiced Defendant and denied him his right to a fair trial and 2) the Court's adoption and reiteration of a "bad faith" standard on the issue of spoliation is inconsistent with notions of fairness and justice.

[¶ 37.] The only material element at issue in the intentional destruction of property charge against Defendant was the amount of damage to the window frame, if any. The only evidence of this was the vehicle. Without notifying Defendant or his counsel, and with full knowledge that Defendant was being charged with felony destruction of property, the police department had the vehicle repaired, destroying any chance Defendant had to defend himself on this vital element. There is no question that this violated SDCL 23A–37–14 and –15. The photographs, as noted by the majority opinion, did not "accurately and correctly represent the property" in accord with SDCL 23A–37–14 and law enforcement failed to notify the Defendant that the property was to be repaired. SDCL 23A–37–15. The majority opinion must again rely on the bad faith requirement in order to affirm the conviction. This is fundamentally unfair.

[¶ 38.] Allowing the State to rely upon this evidence essentially places the burden on the Defendant to disprove the State's estimate for repairs without any evidence because the State has destroyed that evidence. This is precisely the type of situation foreseen in Justice Stevens' concurring opinion in *Arizona v. Youngblood* and reiterated in my dissent in *State v. Engesser.* This *is* the case "in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair." *Youngblood,* 488 U.S. at 61, 109 S.Ct. at 339, 102 L.Ed.2d at 291 (Stevens, Justice concurring).

[¶ 39.] The majority opinion notes that it cannot find prejudice in this case because the jury was able to weigh the testimony of Defendant's repair person against that of the individual who actually repaired the car. This assertion bypasses the critical issue: by destroying the evidence before Defendant could get an estimate, the State took the issue of credibility and weight of evidence out of the hands of the jury. How? By creating a situation where only one witness (the State's repair person) could possibly know the extent of the damage and the need and cost of the re-

pairs. The only thing Defendant could do was attempt to refute that evidence with pictures that failed to accurately depict the damage. What else could the jury do? It would have been unreasonable to accept the Defendant's witness over the State's witness because the State's witness saw the evidence before it was repaired.

[¶ 40.] Perhaps most offensive is that the State was allowed to use Defendant's inability to examine the evidence against him. In cross-examining the Defendant's witness on valuation, the State asked the following series of questions:

Mr. Kosel: (Defense Attorney) Your Honor, maybe ... we'd stipulate to the fact that the State had the car fixed before the Defense even had an opportunity to have anyone else look at it.

Court: So stipulated?

State: Yeah, I'll stipulate to that. So that would make a difference, then, in the estimates, wouldn't it?

Witness: Yes.

State: You wouldn't recommend that anybody come into court and give an estimate of damage without actually looking at the vehicle—

Witness: Correct

State:—would you?

Witness: No.

State: Because they might be misled themselves.

Witness: Uh-huh.

State: Okay, so in fairness, in accuracy, if you sir, having 22 years in the business, wanted to give an estimate of the damage, you'd want to see it with your own eyes.

Witness: Yes.

State: Because of the uniqueness of damage to a vehicle.

Witness: Yeah, no accident—No two accidents are the same[.]

To allow the State to intentionally damage the evidence in violation of the statute and allow the State to actually use the Defendant's lack of access against him is intolerable. The State is benefiting from its own wrong.

[¶ 41.] Due process requires that a criminal defendant have a fair opportunity to defend against the State's charges. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 308 (1973). *See also State v. Lamont*, 2001 SD 92, ¶ 16, 631 N.W.2d 603, 608–9("[w]hen a defendant is denied the ability to respond to the State's case against him, he is deprived of his fundamental constitutional right to a fair opportunity to present a defense." (citation omitted)). This Defendant was denied the opportunity and ability to defend against this charge and for that reason, this Court should reverse the conviction for felony intentional destruction of property, and remand for a fair trial with proper instructions on the State's duty not to destroy evidence. *Engesser*, 2003 SD 47, 661 N.W.2d 739 (Sabers, Justice, dissenting).