STATE, Respondent, v. LEE, Appellant.

(201 N. W. 703.)

(File No. 5472. Opinion filed December 31, 1924.)

1. **Homicide—Evidence—Criminal Law—Evidence of Guilty Knowledge and Concealment After Crime Insufficient to Warrant Conviction of Murder.**

Evidence tending to show merely defendant's guilty knowledge after murder and his attempts to conceal it, though sufficient to sustain charge of being accessory, as defined by Rev. Code 1919, Sec. 3595, held insufficient to sustain conviction for murder while engaged in robbery of bank, under Rev. Code 1919, Sec. 4012, subd. 3, by procuring, aiding, or abetting actual perpetrators.

2. **Homicide—Criminal Law—Knowledge—Evidence Held Insufficient to Show Defendant's Previous Knowledge, so as to Justify Conviction of Murder.**

Evidence held to create no more than suspicion of defendant's previous knowledge of contemplated murder, and not to justify his conviction of murder.

Appeal from Circuit Court, Roberts County; HON. ROBERT D. GARDNER, Judge.

Martin Lee was convicted of murder. From the judgment, and, and order denying new trial, he appeals. Reversed and remanded.

*Babcock & Babcock,* of Sisseton, and *Hall & Purdy,* of Brookings, for Appellant.

*Buell F. Jones,* Attorney General, *E. D. Roberts,* Assistant Attorney General, and *E. J. Turner,* State's Attorney, of Sisseton, for Respondent.

Appellant cited: State v. Clark (S. D.), 194 N. W. 655; State of Iowa v. Fuller, 125 Iowa 212, 100 N. W. 1114; State v. Myer, 69 Iowa 148, 28 N. W. 484; State v. Meyer, 163 N. W. 244.

Respondent cited: 16 C. J. 762; Martin v. State, 34 So. 205; Butt v. State, 98 S. W. 723; State v. Walker, 11 S. W. 1133.

GATES, J. The defendant was convicted of murder, and was sentenced to life imprisonment. He appeals from the judgment and an order denying new trial.

The information charges the murder of Ray Stapleton, assistant cashier of the Corona State Bank, at the bank by John Danielson and George Short on February 3, 1921, while they were engaged in the commission of a felony, to wit, the robbing of the bank (subdivision 3, § 4012, Rev. Code 1919), and contains the following charge against appellant:

"That the defendant Martin Lee before the said felonies were committed in the manner and in the form aforesaid, did feloniously, wilfully, with malice aforethought, and with a premeditated design to effect the death of the said Ray Stapleton, excite, move, procure, aid, abet, counsel, and command the said defendant John Danielson and said George Short aforesaid to commit the said felonies in the manner and form aforesaid. contrary to the form of the statute," etc.

[1] Among the many assignments of error the one chiefly urged is that the evidence is insufficient to sustain the verdict. After a thorough review of the record we can find no basis for the conviction. If the charge had been that of an accessory as defined in section 3595, Rev. Code 1919, we would without ques-

tion find sufficient evidence to sustain a conviction under that charge; but we find nothing in the record to justify the charge that appellant either excited, moved, procured, aided, abetted, counseled, or commanded Danielson and Short, or either of them, to commit the robbery or murder, or that he had any previous knowledge that they or either of them were contemplating either the robbery or the murder. The evidence tended to show that appellant was the proprietor of a public garage and repair shop in Marvin, Grant county, S. D., where he had resided with his family since 1911. He was 45 years of age, and had always borne the reputation of being an honest, industrious, and law-abiding man. He never used intoxicating liquors, and had never before been accused of crime. He was raised on the home farm of his parents near Estelline, S. D., with whom he lived until he was 26 years old, and was married about one year later. He was engaged in farming and blacksmithing prior to removing to Marvin, where he first engaged in the farm implement business. John Danielson was a tenant farmer living about four miles northwest of Marvin. George Short was an ex-service man, who came to Marvin about 1918, was somewhat addicted to the use of intoxicating liquors, was theretofore apparently honest and accommodating. He owned and operated a barber shop in Marvin for a while, and at various times was a mail carrier, worked on nearby farms, and worked for another barber in Marvin. He had once been arrested at Milbank in 1920 for transporting intoxicating liquors, and his Buick car was confiscated by the officers. He was occasionally absent from Marvin for months at a time. The appellant Martin Lee was not in Corona on the day of the murder and robbery, nor present nor engaged in the commission of either of said crimes. It was positively shown by disinterested witnesses that he was at work repairing automobiles in his garage in Marvin at the time the said crimes were committed in Corona. The evidence further showed that Danielson and Short committed the murder, that they hurriedly left Corona in an old Ford car. It was a conspicuously old model with top up and side curtains. The top was a grayish color with a piece torn out of the back curtain. Following is a statement of facts substantially as set forth in respondent's brief:

The car was tracked through the north part of town; the track of the left rear wheel was made by a smooth tread tire, and

the right by a nonskid tire. The car was tracked across the yard of Grant Ducker, who testified that he saw a car of the above description cross his yard at a high rate of speed. There was a ditch along this yard 12 or 14 inches deep, and the tracks found therein corresponded to those found at the rear of the bank. The car tracks were followed into the highway which leads to Marvin. There was a witness who testified that a car of this description went past him at a fast rate of speed on the trail between Corona and Marvin. During the noon hour of the day on which this crime occurred, defendant Lee was seen looking down the road leading to Corona; he came out of his garage several times and looked in that direction. He finally closed the door of the garage, and started to go toward his residence. A car was seen coming down the trail, and Lee hurried back to the garage to let in the car. This was an old model Ford that belonged to Lee. A few minutes later Lee came out of the garage accompanied by George Short. The day following the murder, Wood Smith, a deputy state sheriff, began his investigation. He went to Marvin, and there had a talk with the defendant. He asked Lee if he had seen a Ford, giving a description of the car, in Marvin on the day of the murder, and Lee replied that he had seen no car answering that description, but would let Smith know if he got report or any such car in Marvin on that day. He made such statement knowing that he owned a car of that description, and that it had been driven by Short and returned at the noon hour on the day of the occurrence of the crime. Short made his headquarters at Lee's place of business, and was furnished with a key to the garage. The sheriff of Roberts county took the defendant into custody at Watertown in April, 1923, and the sheriff testified that the prisoner was very nervous, and his hands trembled quite violently, while he was reading the warrant of arrest, and he turned pale. After returning to Sisseton, Lee was taken to the office of the state's attorney, and a statement of the prisoner by questions and answers was taken in writing. Defendant at that time stated that on the morning of February 3d, Short berated him because the car was not in shape to run, and that he (Lee) had to work on the coils and other parts of the car. Lee stated that Short returned on the same day shortly after 12 o'clock, and that Short in the afternoon took one rear wheel off the Ford

which he had driven and exchanged it for a wheel on another Ford. When he was shown Exhibit 5, the gun found in the alley at the rear of the Corona State Bank, he said:

"I am quite positive that is my gun; the last time I saw it, it was in a box of old iron rubbish in my garage, and if the piece that is in my desk slips into its opening and fits, then I am positive that it must be my gun."

It was an old type of revolver which was loaded with powder and caps. At this time Lee stated that Short had made the following statement to him: "I killed the ———, and G——— d——— you, don't you tell." He admitted that he owned a 1913 model Ford which he permitted Short to use, and that this car had a tear in the rear curtain. Lee claimed to have had an arrangement with Short, whereby the latter was to pay him $25 for the use of the Ford car during the winter, and he admitted that Short paid him $50 within a few days after the bank robbery. Defendant in his direct examination testified that Short made the statement hereinbefore mentioned, to the effect that he had killed Stapleton within two or three days after the deputy state sheriff had been in Marvin. He also testified that Short was a drunkard, and admitted that he had heard that Short had once been convicted on a charge of selling liquor. Short, prior to the time defendant was taken into custody, had been arrested by federal authorities and confined in a jail in Minneapolis. He admitted receiving a letter from Short asking him to get recommendations. Lee wrote to Judge Waite, which letter is in evidence as Exhibit 10. In this letter he stated that Short was a trustworthy and honest man. This was after Short had told defendant that he had killed Stapleton. Another letter was written by him to an attorney of Minneapolis, who acted in the capacity of a public defender, in which he commended Short for his honesty and good standing in the community, and stated that some people believed Short was peddling booze, but he didn't believe it could be proved. He admitted having done this, though he knew that Short was a drunkard, had been convicted in federal court, on a liquor charge, and that another action was pending against Short in Grant county, in which his car had been confiscated. One J. A. Falway testified that he overheard a part of a conversation between Danielson and Lee, in which the latter told Danielson that Short had

been arrested in Minneapolis for stealing a car, and said that "they had given him dope or something and he puked up everything, and I suppose we will be on the carpet." Lee admitted that he was in Minneapolis during the time that Short was confined there, and that he was at the Hennepin county jail, but denied that he saw Short, or that he asked to see him. The statements made by appellant to the officers at the time of his arrest were in a number of particulars contradictory to his testimony given at the trial.

[2]   The only possible grounds for supposing that appellant might have been possessed of previous knowledge of Short's contemplated act are two: (1) The fact that Short drove appellant's car; and (2) the fact that appellant came out of his garage several times about the noon hour and looked east on the highway. The mere use of the car did not in any measure point to the previous guilty knowledge of appellant. Without more, that fact was insufficient to connect appellant with the crime, and there was no more.

Upon the second point the testimony of Mr. Eneboe, who had an office about 75 feet west of appellant' garage, was as follows:

"Mr. Lee about noon, at times he came out and looked around and looked onto the road for a moment, and then he walked back into his workshop and he stayed there a while, possibly ten minutes or thereabouts and—a little more or less—and he came out again and looked down east on the trail, and then he repeated that two or three times, and the last time he came out he looked down the trail for quite a moment, and he pulled the door shut and went on home and passed my office, and he lives west of my office down the trail, and after he got past the office a little ways he stopped, and it appeared as if he stopped to listen as of some noise or something coming from the east along the trail, and he started back, and I was in the doorway and my attention was called to a car that was coming from the—from up the hill, and as Mr. Lee was passing by on the street this car came up the street and turned in toward Martin Lee's garage, and there stopped. Martin Lee hurried back; that is, he went back and opened the door, and let this car into the garage. The door was shut and they stayed there quite a while, possibly 10 or 15 minutes, and Lee came out and went on home. As the car came up I seen the person that

was driving the car; it was Martin Lee's old Ford and in the car, who was driving the car, was George Short. That was an old style Ford, with side curtains on it, and one of the back curtains was torn, and the top was kind of faded."

But upon cross-examination Eneboe admitted that he had seen Lee come out of the garage and look up and down the road at other times; that Lee's children would be coming from the east from school about the noon hour, and that Lee would frequently go home with them to dinner and come back with them after dinner.

At the most the testimony on this point raises a mere suspicion that Lee might have been looking for Short, but to suppose that because he might be looking to Short he knew of Short's errand would amount to a suspicion on a suspicion. As was said in State v. Meyer, 181 Iowa 440, 164 N. W. 794: "Verdicts cannot be allowed to rest on mere suspicion, or upon a state of facts not shown to exist."

All of the other evidence in the case tends only to connect appellant with guilty knowledge of the crime after it was committed, and of attempt to conceal it. This, as we have before stated would have been sufficient to sustain a conviction as accessory under said section 3595, but it was not sufficient to sustain the conviction under the offense charged.

The judgment and order appealed from are reversed, and the cause is remanded for a new trial.

DILLON, J., not sitting.

Note.—Reported in 201 N. W. 703.   See, Headnotes (1) and (2), American Key-Numbered Digest, Homicide, Key-No. 249, 30 C. J. Secs. 548, 542.