#27062-a-DG

**2016 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

BRYON JAMES FISCHER,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRADLEY G. ZELL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                           and appellee.

KENNETH M. TSCHETTER of
Nicholson, Tschetter, Adams
 & Nicholson
Sioux Falls, South Dakota                 Attorneys for defendant and
                                           appellant.

* * * *

CONSIDERED ON BRIEFS ON
AUGUST 31, 2015
OPINION FILED **01/06/16**

#27062

GILBERTSON, Chief Justice

[¶1.] Bryon Fischer appeals his conviction by a jury of possession of methamphetamine, possession of two ounces or less of marijuana, and possession of drug paraphernalia. He asserts the evidence of methamphetamine presented to the jury was the product of an illegal search and that the circuit court erred when it denied his motion to suppress the same. He also asserts the jury was not presented with sufficient evidence to conclude beyond a reasonable doubt that he knowingly possessed methamphetamine and that the circuit court erred when it denied his motion for a judgment of acquittal. We conclude that the circuit court did not err by denying Fischer's motion to suppress and that the evidence presented at trial was sufficient to sustain Fischer's conviction for the knowing possession of methamphetamine. Therefore, we affirm.

**Facts and Procedural History**

[¶2.] On November 16, 2011, at approximately 7 p.m., Sioux Falls Police Officer Pat Mertes observed an automobile parked on Spring Avenue, between 10th and 11th Streets, in Sioux Falls, South Dakota. The vehicle was parked under a sign that read: "No Parking on This Side of the Street." Fischer sat in the driver's seat of the vehicle, and an unidentified woman sat in the front passenger's seat. Officer Mertes decided to initiate a traffic stop because of the placement of the vehicle in the no-parking zone. Upon approaching the vehicle, Officer Mertes saw an open can of beer on the floor between the front driver's and passenger's seats. Officer Mertes asked Fischer to accompany him to his patrol car, and Fischer complied.

-1-

[¶3.]     Officer Mertes and Fischer both sat in the front seat of Officer Mertes's patrol car.  Fischer produced a South Dakota driver's license and vehicle registration.  The registration revealed that Fischer was not the owner of the vehicle,[1] and Officer Mertes learned that Fischer's license had been revoked.  Officer Mertes placed Fischer under arrest, placed him in handcuffs, and conducted a search of his person.  The resulting search produced a wooden box containing what Officer Mertes recognized to be a marijuana pipe.  The pipe contained burnt marijuana.

[¶4.]     Upon discovery of the pipe, Officer Mertes asked Officer Chris Bauman, who had arrived at the scene during Officer Mertes's questioning of Fischer, to conduct a search of the vehicle.  Officer Bauman discovered a collectible tin box underneath the front passenger's seat containing hollowed-out lightbulbs, hollow pen tubes, tweezers, a bottle cap, and some paper towels.  Officer Bauman also noticed residue on several of the items, indicating the possible presence of a controlled substance.[2]

[¶5.]     The State charged Fischer with possession of methamphetamine, two ounces or less of marijuana, and drug paraphernalia.  Fischer moved the circuit court to suppress all evidence produced from the search of the vehicle, and the circuit court denied the motion.  At trial, after the State concluded its case-in-chief, Fischer asked the circuit court to enter a judgment of acquittal, and the circuit court

---

1.     Officer Mertes testified that the vehicle was registered to a resident of Minnesota, not to Fischer.

2.     Subsequent testing by a forensic specialist at the Sioux Falls Crime Lab confirmed the presence of methamphetamine residue in one of the lightbulbs.

also denied that motion. After the trial concluded, a jury found Fischer guilty of all three charges. The circuit court sentenced Fischer to ten years for possession of methamphetamine with three years suspended, one year to be served concurrently for possession of two ounces or less of marijuana, and thirty days to be served concurrently for possession of drug paraphernalia.

[¶6.]    Fischer now appeals to this Court, raising the following issues:

1.    Whether the circuit court erred by denying Fischer's motion to suppress evidence obtained from the search of the vehicle.

2.    Whether the circuit court erred by denying Fischer's motion for judgment of acquittal.

**Analysis and Decision**

[¶7.]    Fischer asserts Officer Mertes did not have probable cause to arrest him for driving with a revoked license. According to Fischer, Officer Mertes did not observe him—and Fischer did not admit to—operating the vehicle. Thus, Fischer reasons, any search conducted subsequent to that arrest was invalid. Additionally, Fischer asserts that the subsequent search of the vehicle was improper under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), because he had already been placed under arrest, because "[i]t would not be reasonable to believe the vehicle contained any evidence of [driving with a revoked license,]" and because "it was not reasonable to believe that there would be further evidence of possession of marijuana in his vehicle." Additionally, Fischer asserts "the record is lacking evidence which, if believed, could be sufficient to sustain a finding of guilt beyond a reasonable doubt as to Possession of Controlled Substance." According to Fischer, the State did not prove that he *knowingly* possessed methamphetamine.

[¶8.]      *1.     Whether the circuit court erred by denying Fischer's motion to suppress evidence obtained from the search of the vehicle.*

[¶9.]      Although "[w]e traditionally review a circuit court's decision to suppress evidence under an abuse of discretion standard[,] . . . we review a motion to suppress evidence obtained in the absence of a warrant de novo[.]" *State v. Medicine*, 2015 S.D. 45, ¶ 5, 865 N.W.2d 492, 495 (quoting *State v. Walter*, 2015 S.D. 37, ¶ 6, 864 N.W.2d 779, 781-82). "Thus, we review the circuit court's factual findings for clear error but 'give no deference to the circuit court's conclusions of law.'" *Id.* (quoting *Walter*, 2015 S.D. 37, ¶ 6, 864 N.W.2d at 782).

[¶10.]      Fischer first asserts that Officer Mertes did not have probable cause to arrest him for driving with a revoked license. The State argues that Fischer is precluded from challenging "either the propriety of his arrest or the resulting search of his person" because he failed to raise these issues below. Although Fischer asserts his challenge was preserved below, he further asserts that the circuit court's decision is reviewable as plain error. We agree with the State that Fischer did not preserve his argument challenging the validity of the arrest itself, and we disagree with Fischer that the circuit court plainly erred by admitting evidence gathered in the searches subsequent to the arrest.

[¶11.]      *a.     Whether Fischer may directly challenge his arrest on appeal.*

[¶12.]      Fischer asserts the language included in his motion to suppress was "broad enough to include a challenge to the propriety of his arrest and the resulting search of his person." "Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level." *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20,

¶ 8 n.2, 862 N.W.2d 549, 552 n.2 (quoting *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 14, 809 N.W.2d 834, 837). "To preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, *giving their reasons*." *State v. Dufault*, 2001 S.D. 66, ¶ 7, 628 N.W.2d 755, 757 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d 439, 443) (emphasis added). Consequently, even if the language of Fischer's motion is broad enough to constitute a challenge to the arrest itself, the scope of the motion is necessarily limited by the argument offered to support the motion. Therefore, we consider not only the request made but also Fischer's stated reasons for it.

[¶13.]        In his motion to suppress, Fischer asked the circuit court to exclude the following items:

> all physical evidence, whether tangible or intangible; any statements or admissions of the Defendant; any and all observations of law enforcement officers and any other tangible or intangible evidence *obtained during, or directly or indirectly derived from, the stop of the vehicle* Mr. Fischer was riding in on or about November 26, 2011, in Sioux Falls, Minnehaha County, South Dakota[.]

(Emphasis added.) Standing alone, a challenge to the effect of an arrest—e.g., the result of an incidental search—*might* be sufficiently broad to be viewed as a challenge of the arrest itself. Regardless, Fischer's rationale provides essential context. According to Fischer, the circuit court should have granted his motion for the following reason:

> [T]he vehicle was searched in violation of *Arizona v. Gant . . .* as after placing Mr. Fischer under arrest for driving while revoked and possibly open container, the officers [sic] further search of the vehicle is invalid as they could not expect to find offense-related evidence under the front passenger seat of this vehicle given the offense for which the defendant was arrested. *See State v.* [*Overbey*, 2010 S.D. 78, 790 N.W.2d 35] . . . .

(Emphasis added.) Not once does this statement assert that the *arrest* was invalid; the only mention of the arrest is made to establish a temporal frame of reference for the search. Further, *Gant* and *Overbey* dealt with challenges to the scope of a search incidental to arrest, not challenges to the arrests themselves. *See Gant*, 556 U.S. at 336-37, 129 S. Ct. at 1715; *Overbey*, 2010 S.D. 78, ¶ 15, 790 N.W.2d at 40-41. Thus, while Fischer's motion to suppress preserved his right to challenge the validity of the vehicle search under *Gant* and *Overbey*, Fischer did not preserve his arguments regarding the validity of his arrest and the subsequent search of his person.

[¶14.]  b.  *Whether the circuit court plainly erred by not excluding all evidence obtained incident to Fischer's arrest.*

[¶15.]  Nevertheless, Fischer asserts that our review of his arrest is still proper under the plain error rule. Under SDCL 23A-44-15 (Rule 52 (b)), this Court is permitted to notice "[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of a court." "We invoke our discretion under the plain error rule cautiously and only in 'exceptional circumstances.'" *Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443 (quoting *State v. Henjum*, 1996 S.D. 7, ¶ 14, 542 N.W.2d 760, 763). Among other conditions, a defendant asserting plain error must prove the asserted error was prejudicial. *State v. Whitfield*, 2015 S.D. 17, ¶ 16, 862 N.W.2d 133, 139. "To show such prejudicial error an appellant must establish affirmatively *from the record* that under the evidence the jury might and *probably would have returned a different verdict* if the alleged error had not occurred." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 58, 764 N.W.2d 474, 491 (quoting *Sander v. Geib, Elston, Frost Prof'l*

*Ass'n*, 506 N.W.2d 107, 113 (S.D. 1993)). In order to assert prejudice, then, Fischer would have to argue that in the absence of the circuit court's conclusion that the arrest was valid, the jury would have returned a different verdict—i.e., that the evidence obtained subsequent to the arrest would not have been otherwise admitted into evidence. Fischer makes no such claim; instead, he merely states, "[T]he plain error affects a fundamental, substantial right: Fischer's Fourth Amendment constitutional right against unreasonable searches and seizures." Even if we assume this conclusory statement is true, a constitutional violation alone is not enough to warrant reversal under the plain error rule—the alleged violation must prejudice the appellant. *Id.*

[¶16.] Even if Fischer had made the required assertions for review under the plain error rule, it is evident that the alleged error—if there was any—was not prejudicial. Because a showing of prejudice in this case relies on a showing that the circuit court would have excluded the challenged evidence in the absence of the alleged error, any alternate justification for the search necessarily defeats a claim of prejudice. "Whether probable cause [to arrest] exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). Consequently, where probable cause otherwise exists to arrest for another offense, "an officer's statement of an unsuitable ground for arrest neither voids the arrest nor a search incidental thereto." *State v. Klingler*, 84 S.D. 466, 473, 173 N.W.2d 275, 279 (1969) (quoting *Klingler v. United States*, 409 F.2d 299, 305 (8th Cir. 1969)). Even if we accept Fischer's assertion that Officer Mertes did not

have probable cause to arrest him for driving with a revoked license, Officer Mertes observed an open container of alcohol—in plain view—inside the vehicle.[3] Possession of an open container of alcohol inside a vehicle on a public street is a Class 2 misdemeanor. SDCL 35-1-9.1. An officer of the law can arrest a person, without a warrant, for committing or attempting any public offense other than a petty offense in the officer's presence. SDCL 23A-3-2. Therefore, although the Sioux Falls Police Department typically only issues a written citation for a violation of SDCL 35-1-9.1, Officer Mertes nevertheless had probable cause to arrest Fischer for possessing an open container of alcohol in a vehicle on a public street. Consequently, a lack of probable cause to arrest Fischer for driving with a revoked license is not sufficient to invalidate the search incident to Fischer's arrest. As a result, Fischer would be unable to show prejudice even if he had argued such. Therefore, the circuit court did not plainly err by declining to exclude all evidence obtained incident to Fischer's arrest.

[¶17.]        c.        *Whether the vehicle search conducted after Fischer's arrest was invalid.*

[¶18.]        We next turn to Fischer's assertion that the vehicle search was a violation of the Fourth Amendment. An individual is protected "against unreasonable searches and seizures[.]" U.S. Const. amend. IV; S.D. Const. art. VI, § 11. "This protection 'requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person.'" *Medicine*, 2015 S.D. 45, ¶ 6, 865 N.W.2d at 495 (quoting *State v.*

---

3.    Fischer does not allege Officer Mertes lacked the reasonable suspicion necessary to initiate the stop.

*Fierro*, 2014 S.D. 62, ¶ 15, 853 N.W.2d 235, 240). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Gant*, 556 U.S. at 338, 129 S. Ct. at 1716 (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)). When law enforcement conducts a search in the absence of a warrant, the State has the burden of proving such an exception applies. *Medicine*, 2015 S.D. 45, ¶ 6, 865 N.W.2d at 495. "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Gant*, 556 U.S. at 338, 129 S. Ct. at 1716. Another exception "applies . . . to searches of vehicles that are supported by probable cause." *United States v. Ross*, 456 U.S. 798, 809, 102 S. Ct. 2157, 2164, 72 L. Ed. 2d 572 (1982) (discussing *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925)); *see also State v. Peterson*, 407 N.W.2d 221, 223 (S.D. 1987).

[¶19.]     Although the State does argue the search was justified under the incident-to-arrest exception addressed in *Gant*, the State primarily relies on the automobile exception to the warrant requirement as justification for the search. "It is well settled that an officer having probable cause to believe that an automobile which he has stopped contains contraband or evidence of a crime may search the vehicle without a warrant under the automobile exception." *Peterson*, 407 N.W.2d at 223. Probable cause is defined as "evidence which would 'warrant a man of reasonable caution in the belief' that a [crime] has been committed[.]" *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S. Ct. 407, 413, 9 L. Ed. 2d 441 (1963) (quoting

*Carroll*, 267 U.S. at 162, 45 S. Ct. at 288). After approaching the vehicle, Officer Mertes observed an open container of alcohol between the driver's and passenger's seats. As noted above, possession of an open container of alcohol inside a vehicle on a public street is a Class 2 misdemeanor. SDCL 35-1-9.1. Under the facts of this case, this direct observation of an open container was necessarily "evidence which would 'warrant a man of reasonable caution in the belief' that a [crime] ha[d] been committed[.]" *See Wong Sun* 371 U.S. at 479, 83 S. Ct. at 413 (quoting *Carroll*, 267 U.S. at 162, 45 S. Ct. at 288). Therefore, Officer Mertes had probable cause to search "every part of the vehicle and its contents that [might have] conceal[ed] the object of the search." *Ross*, 456 U.S. at 825, 102 S. Ct. at 2173.

[¶20.] Fischer offers no argument against application of the automobile exception. His only answer to the State's primary argument is that the search was invalid because—according to Fischer—it was not authorized under the *Gant* decision. However, the *Gant* decision deals primarily with vehicle searches conducted incident to arrest—an exception to the Fourth Amendment's warrant requirement distinct from the automobile exception. *See Gant*, 556 U.S. at 347, 129 S. Ct. at 1721 (contrasting the scope of searches authorized under the two exceptions). Fischer has not suggested—or offered authority indicating—that the *Gant* decision disposed of the "specifically established and well-delineated [automobile] exception[]." *See id.* at 338, 129 S. Ct. at 1716 (quoting *Katz*, 389 U.S. at 357, 88 S. Ct. at 514). The *Gant* decision itself militates against such a conclusion. *See id.* at 347, 129 S. Ct. at 1721 ("Unlike the searches permitted by [the incident-to-arrest exception, the automobile exception] allows searches for

evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader."). In conflating the incident-to-arrest and automobile exceptions, Fischer has essentially ignored the State's primary argument.

[¶21.] Even if we were not convinced that the search was justified by the automobile exception, we also conclude the search was justified under *Gant's* incident-to-arrest exception. In contrast to the automobile exception, the incident-to-arrest exception permits a warrantless search of a vehicle "incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest *might* be found in the vehicle.'" *Gant*, 556 U.S. at 343, 129 S. Ct. at 1719 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed. 2d 905 (2004) (Scalia, J., concurring in result)).[4] Fischer asserts "that the officer did not have probable cause to search his vehicle, because it was not reasonable to believe that there would be further evidence of possession of marijuana in his vehicle." According to Fischer, "there was no indication that [he] had been consuming alcohol or drugs."

[¶22.] While the language used by the Supreme Court in *Gant* bears a resemblance to the definition of probable cause, *see supra* ¶ 20, courts generally agree that the quantum of information required to justify a vehicle search incident to arrest is something less than probable cause. *See, e.g.*, *United States v. Rodgers*,

---

4. The *Gant* decision also permits a law enforcement officer to "search a vehicle incident to a recent occupant's arrest . . . when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343, 129 S. Ct. at 1719. However, the State does not dispute that at the time the vehicle search occurred, Fischer had already been placed under arrest and secured in Officer Mertes's police vehicle.

#27062

656 F.3d 1023, 1028 n.5 (9th Cir. 2011) ("[T]he search incident to arrest exception to the warrant requirement . . . appears to require a level of suspicion less than probable cause . . . ."); *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Presumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant's* evidentiary rationale would merely duplicate the 'automobile exception' . . . .").[5]  Whatever the precise level of suspicion required to

---

5.      A number of courts have concluded that an officer needs only reasonable suspicion to conduct a warrantless search incident to arrest.  *See Vinton*, 594 F.3d at 25 ("[T]he 'reasonable to believe' standard probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search."); *People v. McCarty*, 229 P.3d 1041, 1046 (Colo. 2010) (en banc) ("[B]y using language like 'reasonable to believe' and 'reasonable basis to believe,' the Supreme Court intended a degree of articulable suspicion commensurate with that sufficient for limited intrusions like investigatory stops."); *Rose v. Commonwealth*, 322 S.W.3d 76, 80 (Ky. 2010) ("[A]n officer may search a vehicle even when the arrestee is secured if he has a reasonable suspicion that the vehicle harbors evidence of the crime of arrest . . . ." (emphasis omitted)); *State v. Mbacke*, 721 S.E.2d 218, 222 (N.C. 2012) ("[W]e conclude that the 'reasonable to believe' standard set out in *Gant* parallels the objective 'reasonable suspicion' standard sufficient to justify a *Terry* stop."). At least one justice on the Supreme Court shares this view.  *Megginson v. United States*, 556 U.S. 1230, 1230, 129 S. Ct. 1982, 1982, 173 L. Ed. 2d 1288 (2009) (Alito, J., dissenting) ("This case thus appears to present an important question regarding the meaning and specificity of the reasonable suspicion requirement in *Gant*.").

On the other hand, Justice Scalia—the author of the concurring opinion in *Thornton* adopted by the *Gant* majority—suggests another view.  Concurring in a separate opinion in *Gant*, he stated: "I would hold that a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred."  556 U.S. at 353, 129 S. Ct. at 1725.  Some have recognized this "suggests a purpose or nature-of-the-offense test, totally divorced from any inquiry into the likelihood that the evidence is there[.]"  3 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 7.1(d) (5th ed. 2012).  To some extent, the majority opinion in *Gant* also supports this view.  "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.  But in others . . . the offense

(continued . . .)

-12-

justify a vehicle search under *Gant's* reasonable-to-believe standard might be, the Supreme Court has already endorsed a vehicle search incident to arrest in a factual scenario substantially similar to the present case.

[¶23.] In *Gant*, the Supreme Court specifically identified *Thornton* as one case in which a vehicle search incident to arrest was justified. *Gant*, 556 U.S. at 344, 129 S. Ct. at 1719. In *Thornton*, a police officer driving an unmarked police car became suspicious that the driver of another vehicle knew he was a police officer and that the driver was deliberately avoiding pulling up next to him. A check of the vehicle's license plates revealed they were issued to another vehicle. Before the officer could initiate a stop, the driver parked and got out of his vehicle. The officer parked his vehicle, initiated a stop of the driver, and conducted a defensive patdown, which revealed the presence of controlled substances on the driver's person. The officer placed the driver under arrest and searched his vehicle. *Thornton*, 541 U.S. at 617-18, 124 S. Ct. at 2129. The Supreme Court identified this situation as one in which "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 344, 129 S. Ct. at 1719. Thus, *Gant* seems to authorize a vehicle search incident to the arrest of even a recent occupant of the vehicle when the arrestee is found to have personal possession of a controlled substance. *See Thornton*, 541 U.S.

_____

(. . . continued)
of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 343-44, 129 S. Ct. at 1719 (citations omitted). Regardless, we need not—and do not— decide today which approach to follow.

at 617-18, 124 S. Ct. at 2129.[6]  Similarly, once Officer Mertes discovered marijuana and associated paraphernalia in Fischer's pocket, it was reasonable for Officer Mertes to believe the vehicle in which he found Fischer might contain further evidence of those crimes.  Therefore, the vehicle search was justified under both the automobile exception (because there was probable cause to believe additional evidence of the open-container violation would be found in the car) and the search-incident-to-arrest exception (because it was reasonable to conclude the car might contain evidence of controlled-substance possession) to the Fourth Amendment's warrant requirement, and the circuit court properly admitted evidence gathered in the search.

---

6.     We acknowledge that in *Thornton*, possession of a controlled substance was the initial basis for arrest.  In contrast, Officer Mertes initially identified driving with a revoked license as the basis for arresting Fischer and then discovered contraband during a subsequent search incident to arrest.  However, this distinction is not material.  The crime of arrest is defined by the objective facts known to the officer rather than the officer's subjective view of those facts.  *See Devenpeck*, 543 U.S. at 153, 125 S. Ct. at 594 ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996))).  We see no indication that *Gant* was meant to prohibit a search for evidence of crimes contemporaneous to that articulated as the basis for arrest when the officer has probable cause to arrest for those crimes at the time the search occurs—even when the officer has not articulated such as a basis for arrest.  Indeed, the Constitution does not even require a law enforcement officer "to inform a person of the reason for his arrest at the time he is taken into custody[.]"  *Id.* at 155, 125 S. Ct. at 595.  Therefore, "*Gant* generally protects against searches for evidence of *past* crimes . . . [and] restricts broad searches resulting from minor crimes such as traffic violations."  *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 2492, 189 L. Ed. 2d 430 (2014) (emphasis added).

#27062

[¶24.]     *2.     Whether the circuit court erred by denying Fischer's
                    motion for judgment of acquittal.*

[¶25.]     Fischer argues "the record is lacking evidence which, if believed, could be sufficient to sustain a finding of guilt beyond a reasonable doubt as to Possession of Controlled Substance." Fischer was convicted of unauthorized possession of a controlled substance under SDCL 22-42-5, which states: "No person may *knowingly* possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while acting in the course of the practitioner's professional practice or except as otherwise authorized by chapter 34-20B." (Emphasis added.) Fischer denied that the contraband found in the vehicle belonged to him, and the vehicle itself was titled to someone else. Therefore, according to Fischer, "[t]he State did not prove the knowledge element of the statute."

[¶26.]     "We review the denial of a motion for judgment of acquittal as a question of law under the de novo standard." *Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d at 40. Therefore, we give no deference to the circuit court's determination regarding the sufficiency of the evidence. On appeal, then, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d at 40. "The State may . . . prove all elements of an offense through circumstantial evidence." *State v. LaPlante*, 2002 S.D. 95, ¶ 30, 650 N.W.2d 305, 312. However, "[v]erdicts cannot be allowed to rest on mere suspicion, or upon a state of facts not shown to

-15-

exist." *State v. Lee*, 48 S.D. 29, 35, 201 N.W. 703, 705 (1924) (quoting *State v. Meyer*, 164 N.W. 794, 797 (Iowa 1917)); *see also United States v. Plenty Arrows*, 946 F.2d 62, 65 (8th Cir. 1991) ("Although the government is entitled to all reasonable inferences supporting the verdict, we cannot sustain a conviction 'based on a mere suspicion or possibility of guilt.'" (quoting *United States v. Robinson*, 782 F.2d 128, 129 (8th Cir. 1986))). Therefore, "we will set aside a jury verdict only when 'the evidence and the reasonable inferences to be drawn therefrom fail to sustain a rational theory of guilt.'" *State v. Guthrie*, 2001 S.D. 61, ¶ 47, 627 N.W.2d 401, 420-21 (quoting *State v. Hage*, 532 N.W.2d 406, 410 (S.D. 1995)).

[¶27.] In order to meet its burden of proving knowing possession, the State must offer evidence establishing that the accused exercised "dominion or right of control over a controlled substance . . . with knowledge of its presence and character." *State v. Barry*, 2004 S.D. 67, ¶ 9, 681 N.W.2d 89, 92 (per curiam). A defendant's dominion or right of control over a controlled substance does not have to be exclusive and can either be actual—i.e., when the controlled substance is found on the defendant's person—or constructive—i.e., when the defendant "has dominion or control over . . . the premises upon which the [controlled substance was] found[.]" *State v. Goodroad*, 442 N.W.2d 246, 251 (S.D. 1989); *see also Overbey*, 2010 S.D. 78, ¶ 28, 790 N.W.2d at 43 ("The fact that the methamphetamine was not *on* defendant's person when found by the police does not negate a finding of possession." (quoting *State v. Deneui*, 2009 S.D. 99, ¶ 69, 775 N.W.2d 221, 248)). It is clear on the facts of this case that Fischer had dominion or control over the vehicle in which the methamphetamine was found. However, he asserts the State

did not present evidence sufficient to prove that he knew the methamphetamine was present in the vehicle. Although the State did not offer any direct evidence establishing that Fischer knew the methamphetamine was in the vehicle, the State asserts that Fischer's knowledge of the methamphetamine's presence may be inferred because: (1) the methamphetamine was located in a vehicle operated by Fischer, (2) Fischer had marijuana in his pocket, and (3) Fischer refused to submit to a urinalysis.

[¶28.] First, citing *State v. Jahnz*, 261 N.W.2d 426 (S.D. 1978), the State asserts that knowledge may be inferred because the methamphetamine was found inside a vehicle controlled by Fischer. In *Jahnz*, law enforcement officers acting under a warrant found 133 pounds of marijuana after searching the trunk of an automobile owned by the defendant in that case. *Id.* at 427. In rejecting the defendant's assertion that the State failed to prove knowing possession, we said, "[P]ossession alone suffices to permit the inference that the possessor knows what he possesses, especially[] if it is in his hands, on his person, in his vehicle[,] or on his premises." *Id.* at 428.

[¶29.] *Jahnz* is not dispositive because it typifies a class of cases to which the present one does not belong. As the owner of the vehicle, the defendant in *Jahnz* had exclusive access to the trunk of his vehicle. When a defendant has exclusive access to the premises in which the controlled substance is found—in contrast to Fischer's nonexclusive, shared access to the premises in this case—nothing more must be proved for a jury to reasonably infer the defendant knew the controlled substance was present. *See Overbey*, 2010 S.D. 78, ¶ 28, 790 N.W.2d at 43; *Barry*,

2004 S.D. 67, ¶ 9, 681 N.W.2d at 92-93; *State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973). Such an inference is not automatically reasonable when—as here—the defendant had only joint access to the premises. *Barry*, 2004 S.D. 67, ¶ 10, 681 N.W.2d at 93 (quoting *Reeves*, 209 N.W.2d at 22). Unlike the defendant in *Jahnz*, Fischer did not have exclusive access to the vehicle at issue in this case. To hold that Fischer's nonexclusive access to the vehicle "suffices to show knowledge that it [contained contraband] would essentially render the . . . knowledge requirement superfluous and expose individuals possessing [a controlled substance] to strict liability[.]" *See United States v. Howard*, 214 F.3d 361, 364 (2d Cir. 2000). Therefore, *Jahnz* was merely an application of the exclusive-possession-of-premises inference and is not sufficient—standing alone—to support a reasonable inference of knowledge in a joint-possession-of-premises case like the present one.

[¶30.] Similarly, Fischer's knowledge of the methamphetamine's presence in the vehicle cannot be inferred solely from his refusal to submit to a urinalysis. Citing *State v. Mattson*, 2005 S.D. 71, ¶ 54, 698 N.W.2d 538, 554, *abrogated on other grounds by State v. Edwards*, 2014 S.D. 63, ¶¶ 18-19, 853 N.W.2d 246, 253-54, the State asserts that "Defendant's refusal allows an inference that he had knowledge that the urinalysis would have shown possession." In *Mattson*, law enforcement officers stopped a speeding vehicle and initiated a search of the vehicle after a drug dog alerted to the presence of a controlled substance. The search produced several empty syringes as well as one syringe containing methamphetamine. Although each of the vehicle's five occupants disavowed knowledge of the methamphetamine, the defendant had noticeable track marks on one arm, which he claimed were

merely the result of a spider bite. *Id.* ¶¶ 3-9, 698 N.W.2d at 542-43. Among other things, we had to determine "whether [d]efendant's refusal to submit to the urinalysis could be used to infer whether [d]efendant was in knowing possession of methamphetamine on the date in question." *Id.* ¶ 53, 698 N.W.2d at 554.

[¶31.]        The State misreads *Mattson*. Unlike the present case, in *Mattson* the State sought to "establish knowing possession of the controlled substance under a theory that [the d]efendant had *ingested* some of the methamphetamine purchased by the occupants of the vehicle." *See id.* ¶ 56, 698 N.W.2d at 555 (emphasis added). Consequently, we noted that "in the context of a charge of knowing possession of a controlled substance, a *positive* urinalysis that reveals the presence of a controlled substance *in a* [*defendant's*] *urine* is sufficient in and of itself to support a conviction *due to the language of SDCL 22-42-1(1).*" *Mattson*, 2005 S.D. 71, ¶ 54, 698 N.W.2d at 554 (emphasis added). We did not hold that a defendant's refusal to submit to a urinalysis is sufficient in and of itself to support a conviction of knowing possession. Furthermore, SDCL 22-42-1(1)'s definition of a controlled drug or substance "includes an altered state of a drug or substance listed in Schedules I through IV *absorbed into the human body*[.]" (Emphasis added.) Because a defendant is generally considered to have exclusive access and control over substances *on* his person, *see Jahnz*, 261 N.W.2d at 428, the same can generally be said of substances absorbed *into* his person. Thus, an inference of knowing possession in *Mattson* was reasonable on the same basis as the inference of knowing possession in *Jahnz*: the defendant had exclusive access to the premises in which the controlled substance was found. Consequently, while it is reasonable to infer that a defendant with a

positive urinalysis knows that methamphetamine is present in his body, it does not follow that it is reasonable to infer that a defendant who refuses a urinalysis knows that methamphetamine is present in a collectable tin hidden under another passenger's seat in a car owned by a resident of another state.

[¶32.] Finally, citing *LaPlante*, the State asserts that "evidence of marijuana use renders it more likely that [Fischer] possessed the [methamphetamine] and knew what he possessed." In *LaPlante*, husband and wife defendants were both convicted under SDCL 22-42-10 for maintaining a home in which their sons used, possessed, and sold marijuana, cocaine, and methamphetamine. *LaPlante*, 2002 S.D. 95, ¶ 15, 650 N.W.2d at 309-10. On appeal, we held that the LaPlantes' knowledge of their sons' use, possession, and sale of marijuana in their home was relevant to establishing that the LaPlantes also knew their sons used, possessed, and sold methamphetamine and cocaine in their home. *Id.* ¶ 38, 650 N.W.2d at 314. This relevancy determination was made in the context of the defendants' knowledge of their sons' prior drug use spanning several years. *Id.* ¶ 29, 650 N.W.2d at 312 ("This pervasive odor [of marijuana] would clearly suggest to parents *with this history* that illegal drug activity was occurring." (emphasis added)). We did not hold that it was reasonable to infer the LaPlantes knew controlled substances were present in their home because they knew of a third party's marijuana activity in their home.[7] Rather, "the marijuana evidence was only used as one circumstantial

---

7. The LaPlantes argued "that the evidence of marijuana use, storage, and sale in the home was insufficient to sustain a finding of guilt" because, they argued, "marijuana is not a 'controlled substance' within the meaning of SDCL 22-42-10." *LaPlante*, 2002 S.D. 95, ¶ 20, 650 N.W.2d at 310. We

(continued . . .)

'brick' to suggest it was more probable that LaPlantes had knowledge of controlled drug activity in the lower level of their home." *Id.* ¶ 38, 650 N.W.2d at 314.

[¶33.] Like *Jahnz* and *Mattson*, *LaPlante* is not dispositive of the present case. Nevertheless, "upon judicial review[,] *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Moreover, while two or more facts may be insufficient on their own to permit a reasonable inference of knowledge, the *combination* of those facts may nevertheless give rise to a reasonable inference of knowledge. *Cf. United States v. Arvizu*, 534 U.S. 266, 274-75, 122 S. Ct. 744, 751, 151 L. Ed. 2d 740 (2002) (rejecting "divide-and-conquer" approach of isolating and discounting individual facts in totality-of-the-circumstances review of probable-cause determinations). Here, Fischer was in control of the vehicle. When asked to do so, he produced the vehicle's registration. He had another illegal substance and paraphernalia in his pocket. When asked to submit to chemical testing, he refused. Although this body of evidence is not overwhelming, it is not so scant as to prevent even a single, rational trier of fact from finding beyond a reasonable doubt that Fischer knew there was methamphetamine in the vehicle he was operating. Therefore, the record contains sufficient evidence to sustain a conviction for knowing possession of

_____

(. . . continued)

 agreed that marijuana is not a controlled substance under SDCL 22-42-10. However, rather than hold that the marijuana evidence was nevertheless sufficient to sustain a finding of guilt, we instead upheld the conviction because of "the other substantial evidence of controlled drug use, storage, and sale in [the LaPlantes'] home." *Id.* ¶ 21, 650 N.W.2d at 310.

methamphetamine, and the circuit court did not err by denying Fischer's motion for judgment of acquittal.

## Conclusion

[¶34.] Fischer did not properly preserve his argument that Officer Mertes lacked probable cause to arrest him for driving with a revoked license, and the circuit court did not plainly err by denying the motion to suppress because the motion indicated it was based entirely on Fischer's arguments under *Gant* and *Overbey*. Regardless, Officer Mertes had other bases upon which to justify a search of Fischer and the vehicle: (1) under the vehicle exception, and (2) under the search-incident-to-arrest exception. Furthermore, Fischer's conviction is supported by sufficient evidence. Therefore, we affirm.

[¶35.] ZINTER and WILBUR, Justices concur.

[¶36.] SEVERSON and KERN, Justices concur in part, dissent in part.


KERN, Justice (concurring in part and dissenting in part).

[¶37.] I concur in Issue 1, but dissent from the majority opinion's conclusion in Issue 2. The trial court erred by denying a judgment of acquittal as the evidence was insufficient to support the Defendant's conviction for knowing possession of methamphetamine.

[¶38.] On appeal, it is our objective to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979);

*State v. Overbey*, 2010 S.D. 78, ¶ 12, 790 N.W.2d 35, 40. While the State may prove all elements using circumstantial evidence, verdicts cannot rest upon mere suspicion or possibility of guilt. *State v. LaPlante*, 2002 S.D. 95, ¶ 30, 650 N.W.2d 305, 312; *State v. Lee*, 48 S.D. 29, 35, 201 N.W. 703, 705 (1924).

[¶39.]     The circumstantial evidence considered by the jury in this case in support of the conviction is summarized as follows. Fischer was driving a vehicle that belonged to an out-of-state resident, and Fischer's possession of the vehicle was not exclusive. The owner of the vehicle was not identified, and no evidence was presented regarding Fisher's relationship or involvement with the owner. At the time of Fischer's arrest, he had a pipe containing marijuana residue in his pocket, and he refused a urinalysis. A tin containing paraphernalia with methamphetamine residue was found under the passenger seat of the vehicle. Fischer and the female passenger denied knowledge of the tin. The officers released the passenger without searching her or determining her identity.

[¶40.]     Fischer's guilt beyond a reasonable doubt cannot be reasonably inferred from consideration of these facts individually or collectively. Other courts, when considering similar scenarios, have found such evidence insufficient to withstand a motion for a judgment of acquittal. In *United States v. Aponte*, defendants were stopped for a traffic violation and convicted of possession with intent to distribute drugs found inside a cooler in the vehicle's cargo area. 619 F.3d 799, 800 (8th Cir. 2010). Defendants, who did not own the vehicle, argued "the evidence was insufficient for a jury to reasonably conclude [defendants] knew of the drugs[.]" *Id.* Both defendants lacked criminal backgrounds or warrants, submitted

valid identification, and provided nearly identical stories regarding their destination. *Id.* at 801. Additionally, Aponte testified he did not notice the cooler and did not know it contained drugs. *Id.* at 803. The court emphasized that in cases where the defendant did not own the vehicle and was in possession of the vehicle for a short time, additional proof was required to show "that the defendant was aware of drugs concealed in the vehicle." *Id.* at 804. Upon consideration of "all of these circumstances in their totality, [the court concluded the] evidence [was] insufficient to prove [defendants' knowledge] beyond a reasonable doubt." *Id.* at 809.

[¶41.] In *State v. Salas*, law enforcement stopped defendant's vehicle after receiving a tip he was in possession of cocaine. 820 P.2d 1386, 1386-87 (Utah Ct. App. 1991). Two passengers were present in defendant's vehicle, one in the front passenger's seat and one in the backseat. *Id.* at 1387. Defendant denied possessing cocaine and consented to a search of his vehicle, which uncovered cocaine "in the crack of the backseat on the driver's side, where the bottom of the cushion fits the back." *Id.* The court found defendant not to be in constructive possession of the cocaine, stating such possession requires "a nexus between the accused and the drug sufficient enough to allow an inference that the accused had both the ability and the *intent* to exercise dominion and control over the drug." *Id.* at 1388 (emphasis added).

[¶42.] In the present case, no evidence was submitted at trial to establish Fischer's knowledge of the tin containing paraphernalia and methamphetamine residue. Fischer's mere occupancy of the vehicle in "which the drugs [were]

found . . . especially when occupancy is not exclusive" is insufficient to create the necessary nexus to establish constructive possession. *Id.* (quoting *State v. Fox*, 709 P.2d 316, 319 (Utah 1985)).

[¶43.] When examining the evidence we consider an actor's "acts, conduct and inferences [that] are fairly deducible from the circumstances surrounding the offense." *LaPlante*, 2002 S.D. 95, ¶ 30, 650 N.W.2d at 312. "Sufficient proof may include incriminating statements or actions accompanying discovery of the illicit substance, finding the substance with or near the accused's personal belongings, and any other circumstances linking the accused to the substance." *State v. Wheeler*, 2013 S.D. 59, ¶ 10, 835 N.W.2d 871, 873. None of the foregoing types of proof are present in this case. The record does not reflect that Fischer said or did anything incriminating in response to the officers' discovery of the tin containing paraphernalia with methamphetamine residue. Fischer did not appear to be under the influence of drugs or alcohol. The State did not offer any evidence—such as fingerprint analysis—directly linking Fischer to the container. Likewise, the State did not produce any items proved to belong to Fischer that were intermingled with the offending items. With reference to the inference that Fischer refused to submit to a urinalysis because he had used methamphetamine, it is equally fair to presume he did not want to take the test because he had used marijuana or simply wished to invoke his right not to submit to testing.

[¶44.] The evidence in this case is so scant that it cannot be said that a rational trier of fact could conclude beyond a reasonable doubt that Fischer knew of the presence of the tin under the passenger's seat in a vehicle he didn't own. To

hold otherwise would be to create a strict liability standard for any person found in a motor vehicle with an illegal substance. The evidence in this case merely infers the possibility "that this appellant *may* have committed this offense. Beyond this possibility, resort must be had to surmise, speculation, and suspicion to establish the appellant's criminal agency in the offense charged. No rule is more fundamental or better settled than that convictions cannot be predicated on such bases." *Nguyen v. State*, 580 So. 2d 122, 123 (Ala. Crim. App. 1991) (quoting *Parker v. State*, 198 So. 2d 261, 268 (Ala. 1967)) (emphasis added). I respectfully dissent.

[¶45.]      SEVERSON, Justice, joins this special writing.